NEW-YORK,
May, 1820.

JACKSON
v.
ROOT.

JACKSON, *ex dem.* BOND and others, *against* ROOT.

In regard to the proof of the loss of an instrument, so as to excuse its non-production, there is a distinction between such papers as have ceased to be of any value or any evidence of title, and such as are *muniments* of title: As to the first, the slightest proof of loss, and even presumption of loss from lapse of time, is sufficient to entitle the party to give parol evidence of their contents; but as to the latter, the rule of evidence is more strict.

EJECTMENT for part of lot. No. 41, in *Pompey*, tried at the last *Onondaga* circuit, before Mr. Justice *Platt.* The plaintiff claimed under one *Christian Brandt*, a soldier in the first *New-York* regiment, and produced, 1. an exemplification of the patent, dated *July* 8, 1790, and passed the office of the Secretary of State, *January* 25, 1792. 2. A deed from *Christian Brandt* to *Bernard Bond*, one of the lessors of the plaintiff, dated *September* 6, 1782, but admitted to have been executed some time in the spring of 1795, and antedated, with two subscribing witnesses, acknowledged *March* 10, 1795, before *Elihu C. Goodrich*, master in chancery, and again on the 9th *April*, 1801, before *Wm. P. Beers*, master in chancery; *Christian Brandt*, then present, being identified by *Gerrit G. Lansing*, on oath. 3. A deed from *Christian Brandt* to *Bernard Bond*, dated, *April* 18, 1795, for the whole of lot No. 41, in *Pompey*, acknowledged and proved in the like manner. 4. A quit claim deed

An *award* of the *Onondaga* commissioners was made in favour of the defendant, *November* 4, 1800, to which the plaintiff filed a *dissent*, according to the act, in *February* 18, 1801, and it appeared that the defendant was in actual possession in *June*, 1801. *Held*, that though the possession commenced *after* the *award* and *dissent*, but before the expiration of three years; yet the party filing his *dissent* is bound to take notice of the possession, and to bring his action against the party in possession, within the three years, and prosecute the same to effect, within three years, otherwise, the award is conclusive.

If the party in whose favour the *award* is made, is out of possession, and his adversary in possession, the party out of possession must bring his action, and prosecute it to effect, within three years, and if he does so, his title is established, and the recovery is conclusive on the right. And it is the same, if the party dissenting should bring a suit against a tenant in possession, claiming under the party in whose favour the award was made, and a verdict after a trial as to right, is found for the defendant; for the intention of the legislature, in regard to these military lands, was to make a single trial as to the right, in an action of ejectment brought within the time limited, a conclusive bar to another suit; and if there is a trial on the merits, in a suit brought by either party, within the period prescribed, it is within the true meaning and intent of the act.

Where the words of a deed were, " For *value received* of G. and B., I hereby *make over* and *confirm* unto them and their heirs," &c. *held*, that these words were sufficient to raise a use, under the statute, and to convey the premises to the bargainee, in fee.

Where a *soldier* indorsed a conveyance on his *discharge*, in which he described the premises, as follows: " The six hundred acres of land due from the public, as a *soldier* in *Colonel Lamb's* regiment of artillery;" when, in fact, he was not a soldier in *Lamb's* regiment, but in the first *New-York* regiment, commanded by *Van Schaick*. *Held*, that the description was sufficient without the words " in *Col. Lamb's* regiment of artillery," which might, therefore, be regarded as surplusage.

A grantor who has given a deed with full covenants, is a competent witness for a defendant deriving title under him, but not as his immediate grantee, on being released by the defendant; for the release precludes the defendant from resorting to him or his immediate grantor, in case a verdict should be found for the plaintiff.

Where there were two subscribing witnesses to a paper, one of whom was proved to be dead, and the other living within the state, but too aged and infirm to attend the trial; proof of his hand writing was held to be inadmissible; his examination taken under the order of the Court, or under the statute, being better evidence.

from *Bernard Bond* to *Ithuel Battle*, one of the lessors, dated *April* 27, 1795, for the same lot, duly acknowledged, recorded *June* 26, 1795. 5: A deed from *I. Battle* to *Nathaniel Griffin*, one of the lessors, dated *February* 10, 1797, for the same lot, excepting 110 acres lying in the north west corner of the lot, and duly acknowledged.

It appeared by the balloting book, in the Secretary's office, that *Christian Brandt* belonged to *Tiebout's* company, in the first *New-York* regiment, and drew lot No. 41, in *Pompey*.

The plaintiff having rested his cause, the defendant offered in evidence the award of the *Onondaga* commissioners, dated *November* 4, 1800, awarding lot No. 41, in *Pompey*, two-thirds thereof to *John Fisher*, and one-third to *John E. Fisher*, and *Eleanor Clark*, wife of *James B. Clark*, and *Maria Clark*, wife of *Peter Clark*, their heirs and assigns, in fee. A witness for the defendant, proved a contract made between the defendant and *James B. Clark*, for the premises in question, dated *July* 5, 1802, which was produced; and the witness testified that he was a subscribing witness to its execution, at the time it bears date; that at the time this contract was made, he understood that there had been a contract between *James B. Clark* and *Jabez Cobb*, which he presumed was surrendered, at the time the contract with *Root* was executed. The plaintiff's counsel objected to the proof of the existence and destruction of the contract, being sufficient to entitle the defendant to give parol evidence of its contents, *James B. Clark* being then present. The judge decided that the proof was sufficient for the purpose, considering the length of time which had elapsed since the contract was given up.

*E. Cobb*, a witness for the defendant, testified, that his father, *Jabez Cobb*, now deceased, some time in *September* or *October*, 1800, made a contract with *James B. Clark*, for the purchase of the 100 acres of land, which *S. Root*, the defendant, afterwards purchased of *J. B. Clark*. That it was a written contract which he saw, and which he understood was, afterwards, relinquished by mutual consent. In 1801, the witness went on the land, under his father's contract, and cleared four or five acres, which he sowed with

wheat in the fall of the year, and sold the crop to S. Root, when he purchased of J. B. Clark. He did not erect a house or other building on the land. Several persons, whom he named, were on other parts of the lot, claiming under I. Battle and N. Griffin, when the witness went on, and had made extensive improvements ; but that no house was erected or other improvement made on the 100 acres on which the witness entered under the contract; and that his was the earliest improvement made on the 100 acres. That in 1801, he was served with a declaration, by one Cook, in an action of ejectment, by James Jackson, on the demise of Nathaniel Griffin. This declaration was offered in evidence, and was dated August 15, 1801. The defendant also gave in evidence a record of a judgment in the suit of James Jackson, ex dem. Nathaniel Griffin, v. Elnathan Cobb, in which the memorandum was of October term, 1801 ; the trial, June 5, 1802, and a verdict for the defendant, on which judgment was entered and docketted, September 29, 1802. The defendant also gave in evidence, a record of a judgment recovered in ejectment, the 11th August, 1802, on the demise of James B. Clark, against J. Crocker, and which was tried, and a verdict found for the plaintiff, the 5th June, 1802 ; also, the record of a judgment in another suit on the same demise against Elijah Howard and A. R. Meeker, docketted 11 August, 1802. Howard testified, that he had been in possession under Griffin, and after the recovery against him, purchased of Clark ; and Crocker, who also entered under Griffin, abandoned his possession; and in the fall of 1802, in consequence of the verdicts recovered in favour of Clark, the whole lot was given up to Clark by all those who were in possession, and it has been since possessed under this title, and valuable improvements made on the land.

The plaintiff's counsel then produced a dissent, filed, according to the statute, February 18, 1801, by I. Battle, Nathaniel Griffin, E. Howard and J. Crocker, to the award of the Onondaga commissioners. This evidence was objected to on the part of the defendant, because the award, and the recoveries in the actions of ejectment above mentioned, were

conclusive against the plaintiff. The judge overruled the objection, but reserved the question.

The defendant then offered in evidence the original discharge of *Christian Brandt*, as a private of the first *New-York* regiment, having served six years in the army of the U. States, signed by the commander in chief, and dated *June* 8, 1783. On this discharge was indorsed the following instrument: " For *value* received of *George, Bartholomew* and *John Fisher*, I hereby *make over and confirm* unto them, their heirs, executors and administrators, for ever, the six hundred acres of land due me from the public, as a soldier in *Col. Lamb's* regiment of artillery. In witness whereof, I set my hand and seal, this 19th day of *February*, 1784. *Christrian Brandt*, his X mark (L. S.) Test. *James Sickles—Ralph Hodge.*" This instrument was duly proved before *John Ray*, a master in chancery, by one of the subscribing witnesses, who endorsed a certificate of the acknowledgment and proof, dated 17th of *September*, 1791. The discharge and deed endorsed were filed in the office of the clerk of *Cayuga*, on the 1st of *September*, 1794.

To this evidence the plaintiff's counsel objected, 1. Because the soldier not being identified before the master, the deed was not admissible in evidence. 2. Because the deed contained no sufficient words of conveyance. 3. Because it appeared from the balloting book in the office of the Secretary of State, that *Christian Brandt* was a soldier in the first *New-York* regiment, (which was commanded by Col. *Van Schaick*), and the deed, if genuine, passed no title to lot No. 41 in *Pompey*, as it conveyed such lands only as *C. Brandt* was entitled to as a soldier in *Lamb's* regiment of artillery. These objections were overruled by the judge, but the questions reserved.

*Gerrit G. Lansing*, a witness for the plaintiff, proved that *Brandt* was a soldier in the third *New-York* regiment, under Col. *Gansevoort*; and upon the consolidation of the regiments, belonged to the first, or *Van Schaick's* regiment, and always served in *Tiebout's* company, except when he occasionally did duty in the corps of artificers.

*Christian Brandt* was then offered as a witness, and objected to as incompetent; but releases from *I. Battle* and *N.*

*Griffin,* the other lessors, from all the covenants, &c. con-
tained in the deeds above mentioned, being produced, he
was admitted. He testified, that he was a *German* by birth,
and enlisted at *Albany,* as a soldier in the revolutionary ar-
my, in *Tiebout's* company, in *Gansevoort's* regiment, and
upon the consolidation of the regiments, was in *Van Schaick's*
regiment, but in *Tiebout's* company, until the end of the war:
that he received his discharge at *Snake Hill,* and then went
to *Wallkill,* where he staid a fortnight; and then went to
*Fishkill* to see his comrades, where, he staid one night, and
lost his discharge. That he returned to *Fishkill,* where he
missed his discharge, and had not seen it since, until it was
produced at the trial. That he went to *New-York* in *June,*
1784, and staid till *September,* working with different per-
sons. That he then went into *Dutchess* county, and soon
after married, and there resided, until about 14 or 15 years
ago, he removed to *New Canaan,* where he has since lived.
That he knew one of the *Fishers,* a baker, at *Fishkill Land-
ing.* That in *August,* 1795, one *Isaac Smith* applied to him
about his military land, when the witness informed him, that he
had none, having sold it to *Bernard Bond.* That *Smith* asked
him for a quit claim deed, and, by the urgent request of *Smith,*
he executed a deed, which was not read to him, and which
he acknowledged before *Gilbert Livingston* at *Poughkeepsie;*
the circumstances being minutely detailed by the witness.
That he never, to his recollection or belief, ever signed any
other instrument at any other place. That in the spring of
1795, *Bernard Bond* came to him at *Little Nine Partners,*
and showed him a printed book, and said that *Bartholomew
Fisher,* and the witness, were in that book, and that *Fisher*
had got his discharge, and was going to claim his land, and
asked the witness to sell it, who agreed to take forty dollars,
and executed a quit claim deed, on receiving 20 dollars in
cash, and the residue in goods. That he was confident that
he never sold his land before he sold it to *Bond.* Two wit-
nesses, inhabitants of *New Canaan,* testified to the good cha-
racter of *Brandt,* as a man of integrity and veracity. The
defendant then produced a deed, dated *December* 23, 1793,
from *Bartholomew Fisher* to *Robert Pettit, James Saidler,* and
*James R. Smith,* filed in the office of the clerk of *Cayuga,*

the 10th of *August*, 1794, for the lot in question, and which had been duly proved before *James M. Hughes*, a master in chancery, and recorded in the office of the secretary of state, *December* 28, 1793 ; a deed from these grantees to *John Fisher*, dated *December* 31, 1794, for the lot in question ; a deed from two of the children of *George Fisher*, deceased, to *James B. Clark*, who had married the other child ; and a deed from *James B. Clark* and his wife, and *John Fisher* and his wife, to *Root*, the defendant, for 100 acres in lot No. 41, in *Pompey*, being the premises in question, dated 17th *April*, 1815, and recorded *January* 11, 1818.

*John Fisher*, one of the grantees, in the deed endorsed on *Brandt's* discharge, and a grantor in the deed to the defendant, was offered as a witness, and being duly released by the defendant, was admitted and sworn. The witness stated, that he saw *C. Brandt* execute the deed endorsed on the back of his discharge ; that it was executed at the store of *George Fisher*, *February* 19, 1784. *George Fisher* died in 1787, and *Bartholomew Fisher* in 1793. That in *June*, 1795, the witness first learnt that there was an opposing claim to the lot in question, and he procured *Isaac Smith* to go to *C. Brandt* and obtain a quit-claim deed. The circumstances as to the mode of obtaining the deed were detailed substantially as related by *Brandt*. That *Smith*, who had no interest in the land, afterwards executed a quit-claim to the witness. The witness further testified, that after the deed was acknowledged by *Brandt* before *Livingston*, the witness made himself known to *B.* as *John Fisher*, and *B.* then fully admitted that he gave the deed to him and his brothers in 1784. That *B.* made no scruple about executing the other papers, and knew their contents.

The following writing, which the witness *J. F.* testified was in his hand writing, and executed by *C. Brandt*, after being properly explained to him, was then offered in evidence : " Received in the town of *Clinton*, state of *New-York*, this thirty-first day of *August*, 1795, of *John Fisher*, four pounds, eight shillings, *New-York* currency, as per agreement with Mr. *Isaac Smith* ; and I do hereby, also, acknowledge the receiving six pounds, *New-York* currency, of *George, Bartholomew*, and *John Fisher*, on the 19th of *Febru-*

ary, 1784, the value expressed in an instrument of writing, executed on that day, as consideration for my land which was granted me by the state of *New-York* and the *United States*. In witness whereof I have hereunto set my hand, the day and year above mentioned. *Christian Brandt,* his + mark. Witnesses present, *Benjamin de la Vergne, Timothy Bedel.*" *J. F.*, the witness, testified, that *Benjamin de la Vergne,* the subscribing witness, resided in *Dutchess* county, was about eighty years old, and very infirm, and that on being subpœnaed to attend the trial, he refused to attend, declaring that the journey would cause his death ; and that *T. Bedel,* the other witness, was dead. The hand writing of *De la Vergne,* the subscribing witness, was then proved. The plaintiff's counsel objected to the paper being read in evidence ; but the judge allowed it to be read, subject to all exceptions. The following paper, which *J. Fisher* testified was in his hand writing, and executed by *C. Brandt,* to whom it was properly explained at the time it was executed, was offered in evidence ; the witness stating further, that he had inquired after *Young,* the subscribing witness, in order to subpœna him, and that he could not be found. The evidence was objected to ; but admitted by the judge, subject to all exceptions : " Received, *Poughkeepsie, August* 21, 1795, of *John Fisher,* the sum of four pounds eight shillings *N. Y.* currency, in addition to six pounds eight shillings, received of *George, Bartholomew,* and *John Fisher,* the 19th *February,* 1784, being the consideration mentioned as value in an instrument of writing executed to them on that day. *Christian Brandt,* his + mark. Witness, *Thomas Young.*"

The Judge directed the jury, that if they found the deed to *George, Bartholomew* and *John Fisher,* of the 19th of *February,* 1784, to be a genuine deed, executed by the soldier, they must find for the defendant ; and that if they found that it was not a genuine deed, they must give a verdict for the plaintiff, advising them to find specially on that question. The jury found a verdict for the defendant, stating specially, that they found the deed of the 19th of *February,* 1784, to be a genuine deed, executed by the soldier who served, &c.

A motion was made to set aside the verdict, and for a new trial, on the following grounds. 1. The non production of the contract between *James B. Clarke* and *Jabez Cobb*, was not sufficiently accounted for, to authorize parol evidence of its contents.

2. The lessors of the plaintiff being in actual possession at the time of the award made, and having filed their dissent in the time prescribed by the statute, were not bound to bring their action within three years.

3. The instrument on the back of *Brandt's* discharge does not contain any words of conveyance sufficient to pass a fee, or to constitute a deed of bargain and sale, as applicable to the subject matter.

4. That that instrument, if it does contain operative words of conveyance, does not convey lot No. 41. in *Pompey*.

5. That *John Fisher* was an incompetent witness.

6. That the paper purporting to be a receipt, dated the 31st of *August*, 1795, was not proved by competent evidence.

7. That the verdict is against the weight of evidence.

*E. Griffin*, for the plaintiff. 1. In order to excuse the non-production of an instrument, so as to let in parol evidence of its contents, it must be shown that the instrument was executed and existed, that every reasonable inquiry has been made, and the last person into whose hands it is traced, should be called to give some account of it. (*Phillips' Evid.* 347, 348. *Peake's Evid.* 99.) Nothing of this kind had been shown in the present case.

2. It appears, that the lessors of the plaintiff were in *possession* of the land at the time the award was made, and having filed their *dissent* within the time prescribed by the act, (1 *N. R. L.* 213. s. 3.) they were not obliged to bring their action within three years. The case of *Jackson, ex dem. Scott*, v. *Huntley*, (5 *Johns. Rep.* 59.) was mentioned at the trial, and may again be cited; but that was the case of a *vacant* possession; and the expressions of Mr. Justice *Yates* were not necessary to the decision of that case, and are, therefore, to be regarded as *dicta* only. The Court

will not be disposed to extend, by construction, the operation of an act, always regarded as extremely rigorous, and the constitutionality of which has been questioned. The lessors being in actual possession, the act (s. 7.) declares, that the award shall have no effect on their title.

3. The writing endorsed on the soldier's discharge is not sufficient to pass a fee. In *Jackson, ex dem. Hudson,* v. *Alexander,* (3 *Johns. Rep.* 484.) the words of the instrument were " make over and grant," and the Court held, "that the word *grant,* though usually applied to the conveyance of incorporeal hereditaments, was sufficient to pass the title. (*Shep. Touchst.* 227.) In the case of *Jackson, ex dem. Salisbury,* v. *Fish,* there were two instruments; the first contained the words " remise, release, and for ever quit claim," and the other the words *release and assign.* The word *release* is technical, and will pass any interest in the lands which the releasor may have. (*Shep. Touchst.* 319.) Here, the words are, " make over and confirm." The words " make over," have no precise technical import, and must be taken in their popular sense. The word " *confirm,*" has no application, unless where there is a previous estate in possession. A confirmation makes a voidable estate sure, or increases a particular estate. (1 *Inst.* 295. *b.* 296. *a.* 4 *Cruise's Dig.* 152. *Deed,* tit. 32. ch. 8. s. 41. 50.) There must be a previous estate on which it is to operate. The object of the statute of *uses* was, 1st, where the title had, by a good and sufficient conveyance at the common law, passed out of the grantor, to vest the legal title in the person for whose benefit the grant was really intended; 2d, to dispense with the necessity of entry or livery of seisin, in case of a bargain and sale. (3 *Bl. Com.* 333. 1 *Cruise's Dig.* 392. 3 *Cruise,* 172.) If this instrument amounts to a conveyance, it must be as a *bargain and sale.* But it does not contain the proper words for such a conveyance.

4. But if this instrument does contain sufficient words, it does not convey lot No. 41. in *Pompey.* The words describing the premises are, " six hundred acres of land due me as a soldier in *Lamb's* regiment of artillery." These must be regarded as words of description, or of limitation

and restriction. If words of description, they are essential, and cannot be rejected. (7 *Johns. Rep.* 224.) But they are to be regarded as words of limitation ; they do not convey all the lands he may be entitled to from the government of the state, or the *United States ;* but only 600 acres due to him for his services in a particular regiment. It is in vain to say, that *Brandt* was not a soldier in *Lamb's* regiment. As well might it be contended, that where a person conveyed all his lands in *D.*, and he had none in *D.*, that, therefore, his land in *P.* would pass. (*Dyer's Rep.* 50. 87. 376.) The lands comprised within the words of description pass, and no other. (*Jackson, ex dem. Rogers,* v. *Clark,* 7 *Johns. Rep.* 217. 224.) If the description had been lot No. 41, to which he was entitled to, &c. perhaps, the latter words of the description might have been rejected.

5. *Fisher* having given a deed with covenants, was not a competent witness. What *Fisher* swore to on this trial, in case of his death, may be given in evidence by the other tenants, for them, in suits which may be brought against them for the parts of the same lot in their possession. (*Phillips' Ev.* 199.)

6. The paper or receipt, dated *August* 31, 1795, was not proved by competent evidence. *De la Vergne,* the subscribing witness, being living, ought to have been produced. The rule of evidence, on this subject, is clear, positive, and well settled. (*Phillips' Ev.* 356, 357. *Peake's Ev.* 100. *Peake N. P. Rep.* 30.) None of the exceptions to this rule, which are precisely laid down, will reach this case. (*Phillips' Ev.* 362.)

*Sudam,* contra. 1. The evidence as to the loss of the contract between *Clark & Cobb,* was sufficient to account for its non-production, so as to authorize parol evidence of its contents. If the loss is established with reasonable certainty, it is enough. Where there appears to be no reason why the paper should be suppressed, and that it has been delivered up and cancelled, the Court will presume that it was destroyed. The doctrine on this subject has been fully discussed in the cases decided in this Court. (*Jackson* v. *Lucet,* 2 *Caines' Rep.* 363. *Jackson* v. *Frier,* 16 *Johns.*

*Rep.* 193. 197.   *Livingston* v. *Rogers,* 1 *Caines' Cases in Error,* 27.)

2. The lessors were bound to bring their action within three years after the award of the *Onondaga* commissioners.   The preamble to the act to settle disputes concerning the titles to lands in *Onondaga,* (1 *N. R. L.* 213.) as well as its whole scope and provisions, shows that the intention of the legislature was to quiet the titles to this tract of country, and to put an end to litigation concerning them, after a certain period.   The *seventh* section declares, that unless the party in whose favour the award is made, shall within three years after the award is made, commence a suit at law or in equity, to recover the land, &c. and prosecute the same with effect, he and his heirs shall be barred of all right, &c. The award would have been of no consequence to the defendant, unless a suit had been commenced ; and *Clark* did bring two suits, and recovered verdicts, in 1802.   The suits were prosecuted to effect, and judgments entered, on which executions issued; and those under whom the defendant claims were put in possession. The lessor, *Griffin,* brought his suit, and failed.   But it is said that the lessor was in possession of part, and so, constructively, of the whole lot ; but the statute speaks of an *actual,* as distinguished from a constructive possession.   *Clark,* by his suit in 1802, obtained possession of the whole lot, and has had possession ever since. The doctrine contended for, on the part of the plaintiff, would make the statute a dead letter.   The limitation was short, and was intended to be so.   The object of the act was to quiet that part of the country, and to put a speedy end to controversy.   The lessors of the plaintiff so considered it, and brought their action within the time prescribed.   There can be no other rational construction to the statute, so as to give it effect.   (*Bac. Abr. Stat. I.*)   In the case of *Jackson, ex. dem. Scott,* v. *Huntly,* (5 *Johns. Rep.* 59.) it was decided that there must be an *actual* possession of the land, by one of the parties, before the period of limitation expires, or the statute could not attach, and that it did not extend to a case of a *vacant* possession ; the object of the statute being to secure to a party claiming adversely an opportunity to assert his title.

3. The instrument endorsed on the discharge of *B.* was a sufficient conveyance of all his interest. The words " value received," import a valuable consideration, which is sufficient to raise a use, under the statute. Before the statute of uses, the word *grant* would no more convey land than the word *confirm.* The word *confirm* is more operative than grant. No precise or technical words are required to raise a use. If the words amount to a present contract of bargain or sale, a trust is raised, on which the statute operates. (*Jackson* v. *Fish,* 10 *Johns. Rep.* 456.) The word *confirm,* implies a previous estate or lease. The word *confirmavi* is equal to lease and release. (2 *Bl. Comm.* 226. *Noy's Maxims,* 141. 143. 1 *Inst.* 295. *Litt.* sec. 519. *Sheph. Touch.* 312. and note. *Gilb. Tenures,* 79. *Sheph. Touch.* 221.) It is equal to the words *dedi et concessi,* in every thing, except as to warranty. It is manifest that *B.* intended to sell and convey all his right, title and interest in the lands. Though the words " make over" are not technical, yet they show, clearly and unequivocally, an intent to grant and convey all his estate ; and the Court will so construe the instrument as to give effect to that intent. Since the statute of uses, the Court will presume a conveyance, where the words are such as, at common law, would convey a fee simple.

5. The instrument being endorsed on the discharge, and referring to it, both are to be taken together ; and if there is any mistaken description in the deed, it must be set right by referring to the discharge, which shows that *B.* belonged to the first *New-York* regiment, from which he was honourably discharged at the close of the war.

Again ; a circumstance in a description false or mistaken, will not vitiate the deed, if there is a sufficient description without it, to designate the thing granted. The words as to *Lamb's* regiment may be rejected as surplusage, and the remaining part of the description sufficiently ascertains the land intended to be conveyed. (*Jackson* v. *Clark,* 7 *Johns. Rep.* 217. 3 *Johns. Cases,* 388. 1 *Johns. Cases,* 399. 8 *Johns. Rep.* 394. 495.)

6. The objection as to the witness *Fisher,* goes to his credit, not to his competency ; he having been released.

6. Whether the soldier was sufficiently identified, was a matter of fact, fairly submitted to the jury.

7. As to the proof of the receipt; it was shown that *Bedel*, one of the subscribing witnesses, was dead; and the hand writing of the other witness was also proved. In *Jackson, ex dem. Livingston,* v. *Burten,* (11 *Johns. Rep.* 64.) it was decided, that it was not necessary to call all the subscribing witnesses to a deed, but showing that one was dead, and proving his hand writing, was sufficient, without any proof as to the other witness. (4 *Johns. Rep.* 461. 7 *Term Rep.* 266. n.)

But there is a material objection on the part of the defendant. We contend, that *Brandt* was not a competent witness. He had given a deed to *Bond,* with full covenants of seisin and warranty, and *Battle* and *Griffin* could not release him from those covenants. The covenant of seisin is *personal.* If the grantor is not seised, it is broken as soon as it is made, and being a *chose in action,* the assignee cannot bring an action. (*Greenby* v. *Wilcocks,* 2 *Johns. Rep.* 1. *Hamilton* v. *Wilson,* 2 *Johns. Rep.* 72.) (a) And whether the objection is raised before, or after the release, can make no difference ; for if it appears, in any stage of a cause, that a witness is interested, and incompetent, he must be rejected. (*Swift* v. *Dean,* 4 *Johns. Rep.* 523.)

*Sill,* in reply. The objection as to the competency of *Brandt* goes only to the point, that the verdict was against evidence. We admit, that the covenant of seisin was personal, and that *Battle* and *Griffin* could not release the covenants contained in the deed to *Bond*; but, we contend, that a recovery in this action of ejectment, would be no evidence in an action brought on the covenant of seisin. A defendant may be ejected, without its affecting the question of seisin. Ejectment tries only the possessory right; much less can a failure to recover affect the covenant. The verdict, therefore, whether in favour of the plaintiff or defendant, was immaterial to this witness. Besides, *Bond* was a

*a* Vide *Kingdon* v. *Nottle,* 1 *M. & S. Rep.* 355. 4 *M. & S.* 53. 5. *Taunt.* 418. 15 *Johns. Rep.* 488. n.

mere nominal lessor, and on motion for that purpose, his name might have been struck out of the record. Then, as to the effect of the *award;* that the lessors of the plaintiff are concluded by it, seems almost too plain for argument. The only difficulty is, whether the party was in *actual* possession or not. That the lessor, *Griffin*, the party who *dissented*, was in *actual* possession, abundantly appears from the evidence in the case. *Actual* possession is put in contradistinction to a *legal*, or constructive possession. It is an *actual* occupancy of a part, claiming title to the whole. In *Tomb, qui tam.* &c. v. *Sherwood,* (13 *Johns. Rep.* 289.) such a possession was considered an actual possession of the whole, so as to entitle a plaintiff, in an action under the statute to *prevent champerty and maintenance,* to recover the value of the whole lot.

SPENCER, Ch. J. delivered the opinion of the Court. To show a possession prior to the defendant's, under the same title, the defendant was permitted to prove, that the premises had been possessed under a contract with one *Jabez Cobb*, which contract was presumed to have been given up, when another contract was made by *J. B. Clarke* with the defendant. The first contract with *Cobb*, was in *September* or *October*, 1800, and the second, for the same land, with the defendant, in *July*, 1802. It was shown, that in *June*, 1801, *Cobb* went under the contract, upon the premises, part of lot No. 41 in *Pompey*, and cleared four or five acres, sowed it with wheat, and sold the crop to the defendant.

This evidence was objected to, because the contract was not produced, nor shown to be lost, though it was proved that it was relinquished by mutual consent.

The nature of the contract with *Cobb* is not shown ; but it is certain that it was relinquished by both parties, as early as 1802 ; and I think there is a material distinction between papers and writings which cease to be of any use or value, or any evidence of title, and such as are the muniments of one's title. In the first case, the slightest proof of loss, and even presumption, from lapse of time, of a loss, ought to entitle the party to give evidence of the contents, whilst, in the other case, the proof should be more strict. The

presumption of fact is, where an agreement is at an end, and *functus officio*, that there exists scarcely any induce-ment to preserve it ; and it is matter of every day experi-ence, at the circuits, to prove the fact of a tenancy, without producing the lease ; the tenancy is a fact independent of the lease, though it may be under a lease. I am of opi-nion, from the lapse of time in this case, connected with the fact that the agreement was surrendered up, that it was com-petent to prove, that *Cobb* entered and possessed the pre-mises under *Clark*, without strict and rigid proof of the loss of the surrendered agreement. We have high authority for saying, that the rigour of the law has been relaxed, on the subject of proving the loss of papers. (*Livingston* v. *Ro-gers*, 1 *Caines' Cases in Error*, 28.)

The award of the *Onondaga* commissioners was given in evidence ; and it appeared, that on the 4th of *November*, 1800, they awarded this lot, two-thirds to *John Fisher*, and one-third to *John E. Fisher*, *Eleanor* the wife of *James B. Clark*, and *Maria* the wife of *Peter Clark*, and their heirs, in fee.

The plaintiff gave in evidence two deeds from *Christian Brandt* to *Bernard Bond*, given in 1795 ; a deed from *Bond* to *Ithuel Battle* in 1795, and a deed from *Battle* to *Nathaniel Griffin*, in 1797, for all the lot, except 110 acres on the north west corner.

It appeared, that *Nathaniel Griffin*, on the 15th of *Au-gust*, 1801, commenced an ejectment against *Elnathan Cobb*, who was in possession of the premises under his father, *Jabez Cobb*, which cause was brought to trial on the 5th of *June*, 1802, when a verdict passed for the defendant. It also appeared, that two judgments on verdicts were obtain-ed, in ejectment suits brought by *James B. Clark*, in *August*, 1802, against *Job Crocker*, *Elijah Howard*, and *Archibald R. Maher*, all of whom were in possession under *Nathaniel Griffin*, and that in the fall of 1802, *James B. Clark* ob-tained possession of the whole lot.

A dissent was given in evidence by the plaintiff, filed re-gularly, on the 18th of *February*, 1801, by *Battle*, *Griffin*, *Howard* and *Crocker*, and the question arises, whether the

award, under these circumstances, was conclusive on the lessors of the plaintiff.

The facts relative to the possession of that part of the lot now in question, have already been stated. *Cobb* went into possession in *June*, 1801, cleared and sowed, that season, four or five acres, and was served with an ejectment, in which *Griffin* was lessor, in *August*, 1801.

The 3d section of the act (1 *N. R. L.* 213.) declares " the award, after the expiration of two years from the making thereof, binding and conclusive on all persons, except such as shall, within the said two years, dissent from the same, and give notice thereof to the said commissioners, or file the same in the office of the clerk of *Onondaga*, and shall, also, if not in the actual possession of such land, within three years after such award, commence a suit or suits, either at law or in equity, to recover the land, or to establish his right to the same, and shall prosecute such suit or suits to effect, in which case such award or determination shall not ope-rate as a bar to such suit or suits ; but if no such suit or suits are brought within the times aforesaid, and prosecuted to effect, then the said award or determination of the com-missioners shall be final and conclusive." The 7th section of the act provides, " that if the party dissenting, in any of the cases aforesaid, shall be in the actual possession of the premises, then, and in every such case, the award or deter-mination of the commissioners so dissented from, shall, as to the party so dissenting, be considered of no effect, and in every such case, unless the party in whose favour such award or determination shall be made, shall, within three years after such award is made, commence a suit, either at law or in equity, to recover the land, or to establish his right to the same, and shall prosecute such suit with effect, then such person in whose favour such award or determina-tion is made, and his and her heirs, shall forever be barred of all right, title and claim in and to the land concerning which such award or determination is made." It cannot, I think, admit of a doubt, that one of the parties is concluded by the award, and the proceedings which have taken place. The dissent by *Griffin* and others, was filed the 18th of *Fe-bruary*, 1801. *Cobb's* possession under *J. B. Clark*, com-

menced in *June*, 1801. In such a case, was it necessary for those against whom the commissioners had decided, to bring their action within the three years after the award? We have decided, in *Jackson* v. *Huntley*, (5 *Johns. Rep.* 59.) that where there was no possession on the part of those in whose favour the commissioners awarded, within three years after the award, it was not a case in which the party dissenting would be under the necessity of bringing a suit; that it was the intention of the legislature to˙secure to the party claiming adversely to the award, an opportunity to assert his title; and that it was not the intention of the act to oblige the party to proceed as for a vacant˙ possession, in which the title would not come in question. And it was observed by the Judge who gave the opinion in that case, that by the 3d section of the act, the party in whose favour˙the award is given, or the party dissenting, must be in the actual possession of the premises awarded, at some period before the limitation expires, or the statute cannot attach. I cannot entertain a doubt, that the party against whom the award was made in this case, was bound to take notice of such a possession as *Cobb's*. It was commenced and carried on with notoriety, within a few months˙after the award was made and dissent filed; and it was incumbent on those dissenting, to proceed at law or in equity, to establish their title, by actually instituting a suit, and proceeding in it to effect. It would be unreasonable, where the intention of the legislature is so manifest, to have the title to these military lots speedily and expeditiously settled, to hold, that the party dissenting need not bring a suit to establish his right, because the possession was not coeval with the award or dissent. The case of *Jackson* v. *Huntley* repels such an idea. But what appears to be decisive in this case is, that *Griffin* actually commenced an ejectment against *Elnathan Cobb*, who was in possession of the premises under his father, *Jabez Cobb*, in *August*, 1801, and that suit was decided against *Griffin*. He cannot, after this, pretend that he was ignorant of *Cobb's* possession, or that the suit was not brought under the limitations of the act. Had *Cobb's* possession commenced covertly, shortly before the expiration of the three years, and the party dissenting had thus

been deprived of an opportunity of asserting his right, the case would have been materially different. The consequence of the suit is, that it not having been prosecuted to effect, the award of the commissioners is final and conclusive against the party dissenting. There is, however, another view of the case, which appears to me equally decisive.

If the party dissenting in this case is to be deemed in the actual possession of the premises, and the award as to him was inoperative, so as not to conclude his rights; then the party in whose favour the award was made, was bound to prosecute a suit or suits to effect, within three years after the award. The object of the legislature, as has been before observed, was to settle the disputes as to these military lands, by a speedy and expeditious method, in consequence of the manifold frauds and forgeries which had taken place; and the provisions of the statute were designed, in each case, as a short statute of limitation. Thus, under the third section, the requisition that the party against whom the award is made, if not in the actual possession, shall commence a suit within three years after the award, to recover the land or establish his right, and shall prosecute such suit to effect, admits of no other construction than this, that a single trial of the title on the merits shall be decisive. So, too, under the 7th section, if the party in whose favour the award is made, is out of possession, and his adversary against whom it is made, is in possession, it is necessary that the party out of possession should bring his suit, and prosecute it to effect, that is, succeed in establishing his right, within three years from the time of making the award, or he will be barred; but if he succeeds, and a judgment passes for him, then having an award in his favour, and having succeeded at law, the recovery would be conclusive upon the right. In the present case, *J. B. Clark* having, within the three years, instituted two suits in ejectment against persons holding under *Griffin & Battle*, his rights having been decided upon; and having prevailed, his title to those parts of the lot is conclusively established. *Clark* did not bring any suit with respect to the premises; he was saved the necessity of doing so, by *Griffin's* bringing a suit against *Cobb*, who held under *Clark.* Now it appears to me that this suit is within the

NEW-YORK, spirit, equity, and intent of the statute. It was a suit, within
May, 1820. the three years, for the establishment of the title ; and, in ef-
JACKSON fect, it was the same thing, whether *Clark* brought the suit,
v. or whether he defended it by his tenant. It was a decision
ROOT. upon the merits. The suit by *Griffin*, though not strictly re-
quired, necessarily superseded any suit by *Clark*. The latter
had three years to bring his suit, but by obtaining posses-
sion, and especially after a suit against *Cobb*, eventuating in
favour of *Clark's* title, the latter could bring no suit. I am
decidedly of opinion, that although it is not within the words
of the statute, it comes within its purview and meaning, and
operates as a bar to any other suit by *Griffin*. In any other
action than an ejectment, a single trial and decision of the
right, is conclusive upon the parties and their privies. The
legislature meant, with regard to the military lots, that a
trial within the specified time, which should eventuate ef-
fectually, should also be a bar. That trial has been had,
and it must be decisive.

The next question is, as to the effect of the instrument on
the back of the soldier's discharge. For value received, he
*makes over and confirms* unto *George*, *Bartholomew*, and *John
Fisher*, and unto their heirs, &c. for ever, the 600 acres of
land due him from the public, as a soldier in Col. *Lamb's* re-
giment of artillery, and affixes his hand and seal, the 19th of
*February*, 1784. This instrument was duly filed 1st of *Sep-
tember*, 1794. The objections are : 1st, that the grantor was
not identified ; 2d, that there are no words of conveyance ;
3d. that it appears by the balloting book, that *Christian
Brandt* was a soldier in the first *New-York* regiment, (*Van
Schaick's*,) and, therefore, nothing passed, as the grantor had
no lands as a soldier in *Lamb's* regiment.

I will consider the second objection first. It is a cardi-
nal rule, in the construction of deeds, that the intention of the
parties shall prevail, if by law it may. The conveyance from
*Brandt* was operative as a bargain and sale ; the considera-
tion expressed is " for value received ;" and in *Jackson* v.
*Alexander*, (3 *Johns. Rep.* 484.) the very point was adjudged,
on words precisely like these, and that decision is the law
of this Court. In the same case it was decided, that in
conveyances under the statute of uses, it is enough, if the

granting words are sufficient to raise a use, for the statute then performs the task of the ancient livery of seisin. But the question as to what words are sufficient to raise a use, was more fully considered in *Jackson* v. *Fisk and another.* (10 *Johns. Rep.* 456.) There the words of grant were, "I, *C. C.* have remised, released, and for ever-quit claimed;" and it was held that these words were sufficient to raise a trust or use, for the benefit of the bargainee ; and that, by the statute, the use was transferred into possession ; and it was also held, that the words " release and assign," had the same effect. It was there also decided, that no technical precise words were required to raise a use, and that if the words amount to a present contract of sale, or bargain, a trust is instantly raised, on which the statute operates. To the case there referred to, may be added *Doe* v. *Salkeld,* (*Willes' Rep.* 675.) and *Goodright* v. *Moss,* (*Cowp.* 593.) These cases are decisive of the question. The grantor here, " for value received, *makes over and confirms* unto the grantees, their heirs, &c. for ever;" the intention is clear and manifest, and the words denote a present contract of sale.

The next point to be considered is, whether *Brandt's* interest in the lot to which he was entitled, passed by the grant, although he was not a soldier in *Lamb's* regiment. The words are " the 600 acres of land due me from the public as a soldier in Col. *Lamb's* regiment of artillery." It has not been controverted, that there would have been a sufficient description, if no mention had been made of the regiment. In the case of *Jackson* v. *Alexander,* the description, was " my right and claim on the public for 600 acres of land." No objection was made, that the description was not sufficient, and there can be no doubt it was. The donation of the land had been solemnly promised by the legislature, to the privates of the regiment to which *Brandt* belonged. The lands were, therefore, due to him, and it could have meant only the lands thus promised and afterwards granted. The principles laid down in *Jackson* v. *Clark,* (7 *Johns. Rep.* 217.) apply to this case. If there are certain particulars once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance false or mistaken will not frustrate the grant. As

<div align="right">NEW-YORK,<br>May, 1820.<br><br>JACKSON<br>v.<br>ROOT.</div>

there was a devise of a house called the corner house in *An-
dover*, in the tenure of *B. & H.*, when it was in the tenure of
*B. & N.*, it was held that the corner house in the tenure of
*B. & N.* passed, the addition of the tenure being surplusage.
But when the description includes several particulars, all of
which are necessary to ascertain the estate to be conveyed,
no estate will pass, except such as agrees with the whole de-
scription.   Now, we have seen that the grant of the 600
acres due the grantor from the public, would have been suf-
ficient to pass the lot; the addition of the regiment was, there-
fore, surplusage, and may be rejected.   This case is even
stronger ; the grant was upon the back of his discharge,
and necessarily referred to it, for that was the evidence of
his being a soldier, and of the corps in which he had served.

Was the grantor sufficiently identified ?   This point was
fairly submitted to the jury, and I see nothing to warrant us
in granting a new trial, if no improper evidence has been
admitted.   Two objections are made to the testimony ; 1st.
that *John Fisher* was an incompetent witness ; and, 2d. that
the receipt for the consideration of 4*l.* 8*s.* and the admis-
sion that 6*l.* had been paid on the 19th of *February*, 1784,
which receipt purports to be given on the 1st of *August*,
1795, and to be witnessed by *Benjamin De la Vergne* and *Ti-
mothy Bedel*, was not proved by competent evidence.

There can be no objection to *Fisher's* competency ; he
was released by the defendant, and although he was not the
defendant's immediate grantor, yet the release would ope-
rate *pro tanto*, and preclude the defendant from any resort
to him, or to *Clark*.   The objection, then, went only to his
credit.

But the objection to the admission of the receipt, proved
only by a witness, who swore to *Benjamin De la Vergne's* hand
writing, was well taken.   *De la Vergne* was alive, and within
the jurisdiction of the Court, and although very aged, and
probably incapable of attending the trial, yet he does not
appear to be incapable, from the state of his mind, of testi-
fying.   He should have been examined, either under an or-
der of the Court, or a Judge, or under the statute, and then
he might have been cross examined.   The rule is inflexible,
that evidence of the hand writing of a witness is inadmissi-

ble, when the witness is in a situation to be examined, for it
is not the best evidence. It is impossible to say what weight
the jury attached to the facts admitted in that paper; they
were material facts, and so was the genuineness of the re-
ceipt itself, as its execution was entirely denied on the trial,
by the positive evidence of *Brandt.*

This would be a decisive ground for a new trial, was not
the plaintiff concluded by the trial and judgment in 1802.

<div style="text-align:right">NEW-YORK, May, 1820.

Motion for a new trial denied, with costs.