### ALBION K. JONES *versus* MOSES BUCK.

Where the starting point in a description of a levy, is stated in the appraisers' return to be the " S. E. corner of lot number 29," and none of the other calls apply to that lot, but all but the first do apply to lot 32, and the latter lot was in fact the one examined and appraised, the levy will be upheld.

The statute does not require the return of an officer making a levy upon real estate, to specifically declare that the land appraised is "set off" to the creditor, "to have and to hold to him, his heirs," &c.; and, if the name of a person other than the creditor be inserted, the whole phrase may be rejected as surplusage.

ON REPORT.

WRIT OF ENTRY to recover a piece of land alleged to have been set off on an execution in favor of the plaintiff against the defendant.

The land was described by the appraisers as "commencing at the southeast corner of lot numbered twenty-nine, according to" a plan named, "thence northerly, along the west side of the Bennock road, to a point opposite the center of the front door of the house on said lot, thence, by a line parallel with south line of said lot, through the middle of the front entry of said house to the east line or side of the stable, thence southerly, at right angles, by said east side of said stable to the south line of said lot, then east to the first mentioned bound. * * And we have appraised said

real estate, described as above, as the estate in fee simple, in severalty and possession of said Buck, at the sum of," &c., "and have set off said real estate with metes and bounds as aforesaid to said Jones in full," &c., "to have and to hold the premises aforesaid, to him the said Jones, his heirs and assigns forever, in fee simple and in possession."

The essential part of the officer's return was as follows :— "the said appraisers proceeded with me to view and examine the same, so far as is necessary to a just estimate," &c., "and, having so viewed and examined, they appraise the same at the sum of," &c., "and set off the same with metes and bounds as aforesaid, to Joseph Baker, attorney for said Jones, to have and to hold to him, his heirs and assigns in fee simple, in severalty and possession, in full," &c. "I refer to and adopt the returns of said appraisers as a part of this my return, and I have this day levied this execution upon said land, described as aforesaid, and delivered seizin and possession thereof to said Jones," &c. The levy was made June 9, 1862.

It appeared in evidence that the plaintiff demanded possession of the defendant (who was in possession) July, 1863. The defendant declined giving possession to the plaintiff, alleging that the levy was void.

*Robert Ellis*, called by the plaintiff, testified he was one of the appraisers ; that the officer shew the appraisers the premises ; that the appraisers set off by metes and bounds the house and lot Buck then lived in ; and the description accurately describes that house and lot except the number of the lot. After the testimony was all in, the case was withdrawn from the jury and reported for this Court to render judgment for the plaintiff or the defendant as the law, applicable to so much of the evidence as is legally admissible, should warrant.

*J. Baker*, for the plaintiff.

*J. H. Hilliard*, for the defendant.

Courses and distances can be controlled only by monu-

ments. The location of monuments may be shown by parol, while courses and distances cannot. *Chadbourne* v. *Mason,* 48 Maine, 25.

The return of the officer is the only evidence of title by levy. Statute title must be strictly in accordance with the statute, and every thing requisite must appear in the return. *Lumbert* v. *Hill,* 41 Maine, 482.

Parol evidence is not admissible to explain or vary the effect of language used in the return. *Grover* v. *Howard,* 31 Maine, 550.

The description of the premises is void for uncertainty. S. E. corner of lot 29, is a monument. The "house and stable" are monuments, the location of which is proved by parol to be on lot 32, two lots distant from lot 29.

*Melvin* v. *Prop'rs of Locks & Canals,* 5 Met., 15, and the cases there cited, are unlike the case at bar; for, if the number of the lot is discarded, nothing is left for direction. The word "possession," used in the officer's return, has reference to the title of the debtor, and is not descriptive of the land attempted to be levied upon. "Possession" is used in opposition to reversion or remainder. The creditor cannot find the land by the description. If the creditor cannot "find his land in the country, how can the Court find it in chancery?" Lord BACON.

Land conveyed to a client's attorney is not conveyed to the client. Equity may regard the attorney as holding in trust for the client and give relief, but no legal title is thus conveyed to the client.

KENT, J.—The title on which the plaintiff relies to sustain this action, is by a levy on an execution in his favor against the defendant. The defendant resists this title on the ground that the levy was so defective that the title has never passed out of him. The first objection is, that the description of the premises in the return of the officer is void for uncertainty or contradiction, and that it cannot be applied to any existing lot of land, if we follow literally

the points and boundaries named in the levy.    The starting
point, given in the levy, is the southeast corner of lot num-
ber twenty-nine.    The land actually examined, appraised and
which the other lines and monuments designate and set out,
begins at the S. E. corner of lot No. thirty-two.    There is
no question, that, assuming the starting point as the corner
of lot No. thirty-two, the description given in the return
would correspond in all particulars with the lot which the
plaintiff claims as being the one which passed to him by the
levy.    Does the fact that the starting point indicates another
place or point, not reconcileable with the other description,
render the levy void for uncertainty?    It seems now to be
well settled, that where several particulars are named,
descriptive of the premises conveyed, if some are false or
inconsistent, and the lines around the lot be sufficient of them-
selves, they will be retained and the others rejected, in giving
a construction to a deed.    *Vose* v. *Handy*, 2 Greenl., 322;
*Wing* v. *Burgis*, 13 Maine, 111; a case where there was a
mistake in the starting point in the levy, resembling this case
in many particulars.    The very recent case of *Forbes* v.
*Hall*, 51 Maine, 568, reaffirms the same doctrine; *Cate* v.
*Thayer*, 3 Greenl., 71; *Keith* v. *Reynolds*, 3 Greenl. 393.

In Massachusetts, the same rule was laid down before the
separation, in *Worthington* v. *Hyler*, 4 Mass., 196, and has
been repeatedly recognized since.    *Melvin* v. *Prop'rs. of
Locks*, &c., 5 Met., 28; *Bosworth* v. *Sturtevant*, 2 Cush.,
392; *Thatcher* v. *Howland*, 2 Met., 41; *Loomis* v. *Jackson*,
19 Johns., 449; *Jackson* v. *Root*, 18 Johns., 60; *Jackson* v.
*Marsh*, 6 Cow., 281; *Johnson* v. *Simpson*, 36 N. H., 91.
The last cited case is one where there was a mistake in the
number of the lot, the line of which was made a boundary.

If we apply the principle laid down in these cases, to the
facts before us, we find that there are several particulars
stated in the levy that clearly show that the land levied on
can be found only where the plaintiff contends that it is.
The first line is to run to a point opposite to the centre of
the front door of the house.    Then through the centre of

the entry to the east line or side of the stable, and then, at right angles, by the east side of the stable, &c. Here we have indicated a dwellinghouse, and, beyond it a stable, having an east side, along which the line is to run. It is not pretended that there are any erections answering to these calls on any of the other lots. It is shown that they are all found on this lot No. 32. We therefore have no hesitation in deciding that the levy is not void or ineffectual on the ground of uncertainty in the description.

Another objection to the levy is made on the ground that the officer, in his return, says that the *appraisers* appraised the premises at a sum named, " and set off the same, with metes and bounds as aforesaid, to *Joseph Baker, attorney* to said Jones, to have and to hold to him and his heirs and assigns, in severalty and possession, in full satisfaction of this execution and costs of levying the same. I refer to and adopt the return of said appraisers as a part of this my return." The return of the appraisers is, that they " have set off said real estate, with metes and bounds as aforesaid, *to said Jones*, in full satisfaction of this execution and cost of levy." The question is, whether this misrecital by the officer, of the appraisers' return, which he adopts as part of his return, is fatal. The officer says, that the appraisers set the premises off to Joseph Baker, attorney of the plaintiff, and refers to their return, or certificate, as showing that fact. But the appraisers say, in that certificate, that they set it off to *Jones*, the creditor. It may be a grave question whether, taking both returns, the fair construction is not, that the land was set off to the creditor and not to the attorney, even if it were necessary to an effectual levy, that the return should show, by direct assertion, that the land was set off to the creditor, his heirs and assigns, to have and to hold forever. But is this required?

" All the debtor's interest in the premises will pass by a levy." R. S., c. 76, § 6. What makes a levy? The statute points out with great precision all the steps and acts necessary to make it effectual. A levy is a statute conveyance,

and vests the title and seizin in the creditor without other conveyance. "It is the return of the officer of the appraisal and proceedings, which operates as a statute conveyance and divests the debtor of his title, and the delivery of seizin is an acceptance of that title by the creditor, in satisfaction of the debt." This is the language of C. J. SHEPLEY, in *Pope* v. *Cutler*, 22 Maine, 109; *Foster* v. *Gordon*, 49 Maine, 57; *Langdon* v. *Potter*, 3 Mass., 215; *Wyman* v. *Bragden*, 4 Mass., 150, 4 Mass., 512; *Bryant* v. *Fairfield*, 51 Maine, 155. No deed or instrument of conveyance from the sheriff is required, as it is in case of a sale of an equity of redemption, c. 76, § 33. No words of grant are necessary in a levy. The title passes, not by deed, but by the levy, from the debtor to the creditor. When that is complete by the performance of all the statute requisites, and seizin is delivered and accepted, the title is perfect. All that the sheriff is authorized or required to do, after the levy is completed, is to deliver seizin and possession to the creditor, and to make a return of all his doings on the execution. The title rests on the return, and if that shows that all the statute requirements have been complied with, the title is good under it.

In this case the officer's return shows such compliance. It states every thing that the statute specifies as requisite in § 5. Section 1 provides that "real estate may be taken to satisfy an execution, by causing it to be appraised by three disinterested men." It is not a sale to satisfy the execution, and the transfer of the title by the officer to the purchaser, but the taking of the real estate and title thereto by the creditor on appraisement in satisfaction and payment of the execution. It is clear that the title under a levy can only pass to the creditor, and cannot to an assignee or grantee of a creditor, nor to his attorney. Baker can set up no legal title under the levy, even if he is to be considered as taking it for the benefit of the creditor, his client. The title, if it passes at all, passes to the creditor.

The sheriff in his return says that he delivered seizin and

possession to Jones, the creditor, although he had before inserted the words objected to, in relation to Joseph Baker, attorney. The question is, whether the insertion of these words, manifestly by inadvertence, avoids and renders nugatory the attempted levy? To determine this question we may inquire whether any such language, or its equivalent is required by the statute; i. e. is it essential that there should be in the return a specific declaration that the land is set off to the creditor "to have and to hold to him and his heirs," &c. If, instead of the name of "Joseph Baker, attorney to said Jones," the return had read, "to said Jones, the creditor," would they have been absolutely necessary to make the levy valid. Might they not be regarded as superfluous and surplusage? The law does not require them. The return would be perfect without them, and the title would pass by force of the return, as it shows a full performance of all prerequisites to make a perfect levy, without the words in question. If then they were not necessary, and might be struck out and leave the levy good, if the true name had been inserted, may they not be regarded in the same light when another name is inserted? Or, in other words, will a levy, perfect in all respects to give title to the creditor, with seizin delivered to the creditor, be rendered nugatory by the insertion in the return, by mistake or ignorance, or other cause, of the name of a person who could not, in any event, derive any title or interest therefrom to himself,—and when the whole sentence, in which the name is inserted, might be struck out as unnecessary, even if it had correctly named the creditor? It is to be observed that in the appraisers' certificate, adopted by the officer in his return, the land taken is described as the estate in fee simple, in severalty and in possession of Moses Buck, the debtor. This action is between the creditor and debtor, and as between them the above description is important in designating the land levied on in fact.

In the case of *Balch* v. *Pattee*, 38 Maine, 353, it appeared that the officer had first stated in his return, that the levy

was on the 17th of February, 1851, but he certified at the bottom of his return, that the levy was completed March 11, 1851. It was objected that this was fatal. The Court say, that " the officer having certified at the bottom of his return, that the levy was completed on March 11th, when nothing appears to have been done, or was necessary to give any additional effect to the proceedings, must be regarded as nugatory." The levy was sustained.

We are aware that it has been decided that a statute levy must be perfect, and that it cannot be reformed in equity, where there are subsequent purchasers, or levies by other creditors, subsequently. *Lumbert* v. *Hill*, 41 Maine, 475. It is not decided in that case that the levy cannot be reformed, if no third party has intervened and the title remains in the debtor, if the levy is inoperative. But, if it cannot be reformed, within the rules of equity, it does not follow that what is surplusage, and useless, and unnecessary, may not be rejected or disregarded, if what remains contains all that the statute requires. We do not question the doctrine, that such a mistake as this, if made in reference to any fact, or proceeding, or party, expressly required by statute and made essential to the validity of the levy, would be fatal. But we do not regard this in that light.

The conclusion is, that judgment must be rendered for the demandant.                *Judgment for demandant.*

APPLETON, C. J., CUTTING, DICKERSON, BARROWS and TAPLEY, JJ., concurred.