STATE OF VERMONT v. JAMES MORTON, SAMUEL BEECROFT, CHARLES SAXTON AND WILLIAM L. MENTZER.

### Forgery. Indictment. Evidence.

In an indictment, against several persons, for forgery upon a bank check, evidence tending to prove an agreement between the respondents to procure money from banks by forged paper, without reference to any particular bank, is admissible.

To sustain an indictment for forgery a case within the statute must be proved. The making or altering an instrument not named in the statute is a misdemeanor at common law, but is not punishable by sentence to the state prison.

There is no duplicity in an indictment, in alleging that the respondent forged and caused to be forged and aided and assisted in forging;—they being the same offence under the statute, and in legal contemplation the same act.

In an indictment for forgery the instrument forged must be set forth *in haec verba*.

A bank check may be properly described, in an indictment for forgery, as an order for money; or as a bill of exchange.

An endorsement on a bank check, that it is good for a given amount, signed by the cashier or teller, is an acceptance of an order or bill, and may be so described in an indictment for forgery.

*Semble,* That such an endorsement is neither a writing obligatory, a certificate or an accountable receipt, in the sense in which those terms are used in the statute relating to forgery. (Comp. Stat. 551, § 1.) REDFIELD, CH. J.

There is no fatal variance between an allegation in an indictment that an order is drawn upon the "President, Directors and Company of the Bank of Vergennes" and the proof of an order drawn upon them under the appellation only of "Bank of Vergennes."

It is not necessary to allege, in an indictment, that an order is drawn upon a corporation by a name different from its corporate name, when the order is set forth *in haec verba*.

A general usage in a particular business need never be alleged in pleading. It may be proved on trial without being averred.

That a teller of a bank has authority to accept checks drawn upon the bank, by certifying that they are good, need not be averred in an indictment for forging such an acceptance.

A person forging an instrument, purporting to be drawn by an officer or agent, is bound by his own representation, and estopped from denying the authority of such officer or agent.

INDICTMENT FOR FORGERY   The first count in the indictment alleged " that James Morton, otherwise called Matthew Matthews, "late of the city of Philadelphia, in the county of Philadelphia, in "the state of Pennsylvania, on a certain paper writing purporting "to be a bank check, which said paper writing is as follows, that is "to say:

" No. ——                    Vergennes, June, 29th, 1854.

" Bank of Vergennes, pay to self or bearer, twenty-nine hun-
" dred dollars.

" $2.900.                                JOHN GILL.

" on the 6th day of July, in the year of our Lord, one thousand eight
" hundred and fifty four, with force and arms at Rutland afore-
" said, did wittingly, falsely, deceitfully and feloniously make, forge
" and counterfeit; and wittingly, falsely, deceitfully and feloniously
" did cause to be falsely made, forged and counterfeited; and wit-
" tingly, falsely, deceitfully and feloniously did aid and assist in the
" false, deceitful and felonious making, forging and counterfeiting
" an accountable receipt for money, which said false, forged and
" counterfeited accountable receipt for money, is as follows, that is
" to say : ' Good for twenty-nine hundred dollars.   H. C. Horton,
" ' teller,' with intent to defraud, contrary to the form, force and
" effect of the statute in such case made and provided, and against
" the peace and dignity of the state."   And "that Samuel Bee-
" croft, otherwise called John Gill, late of the city of Philadelphia,
" Charles Saxton, late of the city of Philadelphia, and William L.
" Mentzer, late of the city of Philadelphia aforesaid, before the
" said felony was committed in manner and form as aforesaid, on
" the same 6th day of July, in the year of our Lord, one thousand
" eight hundred and fifty-four, with force and arms, at Rutland
" aforesaid, did unlawfully and feloniously counsel, aid, abet and
" procure the said James Morton, otherwise called Matthew Mat-
" thews, to do and commit the said felony in manner and form as
" aforesaid, with intent to defraud, contrary to the form, force and
" effect of the statute in such case made and provided, and against
" the peace and dignity of the state."

The second count was similar in form to the first, but described
the check as a bill of exchange, and the endorsement or certificate
of the teller as an acceptance.   The third count described the
check and endorsement as a "paper writing, purporting to be an
" evidence of debt, issued by the President, Directors and Com-
" pany of the Bank of Vergennes."   The fifth count described the
endorsement as a "certificate and evidence of debt."   The sixth
count described both the check and the endorsement as a "writing
obligatory."   The fourth count alleged that "the said James Mor-

" ton, otherwise called Matthew Matthews, on the 6th day of July,
" in the year of our Lord, one thousand eight hundred and fifty-four,
" with force and arms at Rutland aforesaid, did wittingly, falsely,
" deceitfully and feloniously make, forge, and counterfeit; and wit-
" tingly, falsely and deceitfully did cause to be made, forged and
" counterfeited; and did wittingly aid and assist in the false mak-
" ing, forging and counterfeiting, a certain other paper writing, pur-
" porting to be an order for money, together with a certain false and
" forged acceptance written thereon, drawn upon the President,
" Directors and Company of the Bank of Vergennes, a banking
" corporation duly organized and established by and under the
" authority and laws of this state; which said false, forged and
" counterfeited order and acceptance are and were as follows, that
" is to say,

     " No. —                   Vergennes, June 29th, 1854.

     " Bank of Vergennes, pay to self or bearer, twenty-nine hun-
" dred dollars.

     " $2.900.                             JOHN GILL.

     " Endorsed: ' Good for twenty-nine hundred dollars, H. C. Hor-
" ' ton, teller.'

" with intent to defraud: contrary to the form, force and effect of
" the statute in such case made and provided, and against the peace
" and dignity of the state." And " that the said Samuel Beecroft,
" otherwise called John Gill, the said Charles Saxton, and the said
" William L. Mentzer, before the said last mentioned felony was
" committed, in manner and form aforesaid, on the same sixth day
" of July, in the year of our Lord one thousand eight hundred and
" fifty-four, at Rutland aforesaid, did unlawfully, wittingly and fel-
" oniously aid, counsel, abet and procure the said James Morton
" otherwise called Matthew Matthews to do and commit the afore-
" said felony, in manner and form aforesaid, with intent to defraud;
" contrary to the form, force and effect of the statute in such case
" made and provided, and against the peace and dignity of the
" state."

A *nolle prosequi* was entered as to Mentzer. The other respon-
dents severally demurred. The county court, September Term,
1854,— PIERPOINT, J., presiding,— overruled the demurrer, and

adjudged the indictment sufficient — to which the respondents excepted, and being again arraigned, severally plead *not guilty.*

On the trial, the state's attorney offered evidence to show that a banking corporation, whose corporate name was " The President, Directors, and Company of the Bank of Vergennes," were, at the time of the said supposed forgery, doing business at Vergennes, in this state ; and that it was usual for them to act upon and pay checks of the form recited in the indictment.

Said attorney also offered in evidence the paper recited in the indictment, with other evidence tending to show that H. C. Horton was the teller of said banking corporation; and that the endorsement on said paper, purporting to be signed by " H. C. Horton, teller," was not signed by the said Horton, who was the teller of said banking corporation.   Said attorney also offered evidence tending to prove, that previous to presenting the check named in the indictment, there was an agreement between the respondents to procure the money from banks by forged paper, without reference to any particular bank, to all which offers the respondents objected, but their objections were overruled and the testimony admitted, to which the respondents also excepted.

*E. Edgerton* and *C. B. Harrington,* for the respondents.

*M. G. Everts,* for the prosecution.

. The opinion of the court was delivered by

REDFIELD, CH. J.   I. The testimony of the agreement between the defendants, to procure money by means of forged paper, from banks, without reference to any particular one, was competent for the purpose of implicating each defendant, in the acts of the others, in carrying forward the common design.   Such evidence tended to show such concert among the respondents, as to implicate the whole, not only in the acts, but the declarations of all the others, with reference to and in pursuit of the common object of the conspiracy or concert.

II. There can be no doubt the indictment must fail as to the accessories, if it does as to the principal, for the one charge is made in terms dependent upon the other.

There can be no doubt that many and probably a majority of the counts are fatally defective.   To sustain an indictment for forge-

ry, it must be brought within the statute. The making or altering of an instrument, not named in the statute, has been held indictable, as a misdemeanor at common law, but not punishable by sentence to state prison, according to the statute against forgery. *State* v. *McLeran,* 1 Aik. 311. And without much examination I should entertain no doubt, that the counts where it is attempted to count upon this instrument as a writing obligatory, or as a certificate, are clearly bad; the one probably having reference to sealed instruments, and the other to such certificates only as are made evidence, in courts of justice. It does not seem to me very probable, that this writing is what the statute intends, by an accountable receipt.

But it seems to us that some of these counts are sufficient to withstand all reasonable severity of construction. The objection of duplicity is, at first view, rather plausible. But on looking at the subject, the forging, procuring or causing to be forged and aiding in forging are not only the same offence, under the statute, but are in legal contemplation the same act. And the English precedents, in the case of Fontleroy, one of the most noted cases in the history of crime, and which would have been broken down if it were possible it should have been done, show that it is the practice there to set forth the offence in this manner, and we think there is no duplicity.

The fourth count in which the respondent Morton is charged with forging the writing itself, under the denomination of an order for money, together with the acceptance of it by the bank, seems about as difficult to dispose of, as any of them. There can be no manner of doubt, upon the English cases referred to in the argument, that this writing may properly enough be described, in an indictment, as an order for money. And it being alleged to be drawn upon the President, Directors and Company of the Bank of Vergennes, is no fatal variance, unless the instrument is described as importing that upon its face. And there seems no necessity of alleging that the order was drawn upon the corporation by a name different from their name of incorporation, where the instrument is set forth in *haec verba,* as it must be, in charging forgery. For then it appears upon the face of the indictment, that it was drawn in another name, as certainly as if averred in terms. This is expressly so laid down

in 3 Chit. Cr. Law, 1040. " When the *tenor* of a covenant is set forth the *purport* must necessarily appear." 2 Leach, 660. And the common allegation in declarations, and which is found in indictments for forgery even that the prisoner drew a bill, upon one person, by a different name, or on a bank, omitting part of the name, as in this case, is never necessary, where the very words of the bill are set forth, which makes it as obvious as any averment can. It may have been an oversight, that the respondents are found guilty of forging the order itself, as, from the identity of the names of one of the respondents and the drawer of the order, there is, perhaps, no moral doubt, the order was genuine. But this is not such a legal certainty, as will justify us in disregarding the verdict of the jury, and the record of the county court. And it would seem too, that the endorsement is correctly charged in this count, as an acceptance of the order. No particular form of words is necessary to constitute an acceptance of a bill, or order. This form is as significant as any, and is coming to be quite common in practice. In regard to the right of the teller of a bank to make such acceptance, it depends, of course, upon the manner of doing business, in such and similar institutions, and if such is the general rule, in such institutions, it becomes like a matter of law; and if of such notoriety, as to have come to the knowledge of the judges, it is to be given to the jury, from the mouth of the court. But if not of such general notoriety, it is then to be shown to the jury by the testimony of those conversant with the subject. It is like general usage in a particular business, which is to be proved until it becomes of sufficient notoriety to be declared by the judge. But such general usage, in particular business need never be alleged in pleading, more than are the rules of law applicable to the case. If this order were certified good, and an acceptance is nothing more, by the cashier of the bank, it would be recognized as an admitted rule of law, that such officer had authority to write such acceptances, and thereby to bind the bank. And a teller is but the agent and assistant of the cashier, and their offices and duties are so nearly identical, that we do not deem it necessary to allege, that he had authority to bind the bank. If his general duties by the common course of business, in such institutions, pertained to a different department, and he was only author-

ized to bind this bank, by the particular usage of this bank, the averment of his authority might be needful to the sufficiency of the indictment, as upon its face the presumption would, in such case, be against his authority without the averment. But we think now the presumption is in favor of the authority. And in the absence of all presumption, when the authority depends upon the general usage of the business, it may be shown upon trial, without the necessity of an averment. This seems to be supported by the authorities.

It is certainly not common to set forth, in indictments for forgery of bills and acceptances, purporting to be issued by the officers of corporations, or the agents of natural persons, that such officers or agents had authority to do such acts. If it be necessary to make such averments, it is equally necessary to prove them, and it would certainly be a very remarkable line of defense in such case, on trial before the jury, that the officer represented upon the forged instrument as having done a certain act, had no authority to do such act. It may be safe, we think, to affirm, that the person forging the instrument should be bound, by his own representation upon that subject, and if not, that a forger, who is skillful enough to be formidable, will make no mistakes, in the point of authority of the officer. This would be a safe and just presumption to make against one shown to have forged such a paper. It is like the rule, by which the acceptor of a bill is precluded from denying the genuineness or the authority of the bill itself. I certainly recollect no case, where the person putting off a forged instrument, purporting to be executed by an agent, was allowed to defeat the prosecution, by showing want of authority in the person represented as agent upon the forged paper. He is estopped by the representation.

We have no doubt this paper might consistently with the decided cases be fairly described, in an indictment, as a bill of exchange, as in the second count. But if one of the counts is sufficient we need spend no time upon the others.

Judgment that respondents take nothing by their exceptions.