## STATE VS. COLE.

In a prosecution for uttering and passing a forged bank bill, the state cannot, for the purpose of proving the *scienter*, introduce testimony showing that defendant had passed other counterfeit bills of the same denomination and on the same bank as the bill laid in the indictment, without producing such bills in court, if within the reach of the prosecution, or, in case they are in defendant's possession, without giving him notice to produce them.

Whether persons who did not claim to have any knowledge of the handwriting of the officers of the bank by which the alleged counterfeit bills in this case purported to be issued, but who had been engaged in mercantile business for several years, and claimed to be judges of the character of bank notes in circulation, were properly permitted to testify as experts, is not here decided.

In a prosecution under sec. 6, ch. 166, R. S., it is not necessary to show the *legal* existence of the bank by which the bill alleged to be counterfeit purports to have been issued, or its authority to issue such bills, but it is sufficient to show its *actual* existence, by showing that it has a place of business—that it has bills issued and in general circulation, &c.

The circuit court did not err in refusing to set aside a verdict against the defendant in a criminal action on the ground that the jury were impanneled and sworn before the defendant was required to plead to the indictment.

CERTIFIED from the Circuit Court for *Winnebago* County.

Indictment for uttering and passing "in payment to one George Eastman, as true, a certain false, forged and counterfeit bill, purporting to have been issued by a corporation duly authorized for that purpose by the laws of the state of Ver-

mont, * * * that is to say, by the Bank of Rutland (the said Bank of Rutland being duly authorized by the laws of the state of Vermont aforesaid for the purpose of issuing bank bills) * * *." Here follow the *scienter* clause, a copy of the bill, &c. Defendant moved to quash the indictment, (1.) Because it did not set forth facts sufficient to constitute any crime or offense. (2.) Because of repugnance—the indictment charging that the bill therein charged to have been uttered purported to have been issued by a corporation duly authorized for that purpose by the laws of Vermont, while the bill set out purports no such thing. (3.) Because one of the grand jury who found said indictment was summoned and served on the petit jury at the previous term of said court, and was one of the twelve jurymen who tried said defendant upon an indictment for uttering and passing the same bill set forth in the present indictment, and for the same offense, which jury returned a verdict of guilty. The last ground of objection was supported by an affidavit showing the facts to be as stated in the motion. The motion to quash was denied. *After* the jury had been empanneled and sworn, the defendant was put to plead, and plead not guilty. The prosecution called a witness who testified that his name was *George F.* Eastman, but that he was generally known by the name of *George* Eastman; and that the defendant passed the bill in question to him, &c. The defendant objected to this evidence on the ground that there was a variance between the indictment and the proof as to the name of the person on whom said bill was passed. Objection overruled. The court also admitted, against defendant's objection, evidence as to conversations between defendant and other persons, after the arrest of the former. There was no evidence given of the existence of the Bank of Rutland, or its authority to issue bills, except the testimony of certain witnesses that they had done business at said bank, and of others that they had been accustomed to handle its bills. The defendant asked the court on that ground to instruct the jury

that they must bring in a verdict of "Not Guilty;" but the instruction was refused. When the bill which the witness Eastman testified was passed to him by defendant, at the time mentioned in the indictment, was offered in evidence, defendant objected, 1. Because it did not appear upon its face that it was issued by a corporation duly authorized, &c. 2. Because the bill offered was not the one set out in the indictment. The chief variance relied upon was between the forms, "J. B. Reynolds, Cash." and "J. B. Reynolds, Cash'r." Other grounds of exception on the part of the defendant will sufficiently appear from the opinion. The court instructed the jury, first, "That the guilty intent of the prisoner might be presumed from the passing of other bills of a like character and denomination, on the same bank and struck off from the same plate, to other persons, about the same time, without any other proof as to the character of the bills so passed to others; but in the absence of such similarity as to the character of other bills so passed by the defendant, there must be positive proof as to their character in order to warrant the presumption of guilty knowledge on the part of the defendant." It also instructed them "that the *legal* existence of the Bank of Rutland need not be proved; its *actual* existence is sufficient, and may be proved by facts of this character—that it has an office and place of business—that it has bills which it has issued and in general circulation—that it buys and sells exchange, discounts paper, receives deposits, and does such other acts as banking houses are in the habit of doing; and there must be proof of this character, in the absence of positive testimony, sufficient to satisfy you, beyond any reasonable doubt, of the actual existence of the Bank of Rutland."

Verdict, "Guilty." The defendant moved to set aside the verdict and for a new trial, on the grounds that the jury was chosen and sworn before the defendant was required to plead or did plead to the indictment; that there was no evidence to warrant the verdict; and that improper evidence had been ad-

mitted and erroneous instructions given, &c. Motion denied, and judgment rendered upon the verdict.

*Whittemore & Weisbrod*, for defendant:

1. The indictment should have been quashed for repugnancy, (1.) Because the bill set out does not purport on its face to have been issued "by a corporation duly authorized," &c. 2 Russ. on Crimes, 379–382; *Robinson v. The State*, 6 Wis., 585; *Snow v. The State*, 14 id., 479. (2.) Because one of the petit jury which had at the previous term found the defendant guilty of the offense here charged, was upon the grand jury. This would have been a good ground of challenge, if the defendant had had an opportunity (1 Burr's Trial, 38; 1 Chitty's Cr. Law, 309, note, 543, 544, note 1); and an objection which would be a good ground for a challenge may be taken on a motion to quash. *Newman v. The State*, 14 Wis., 400, 401; *State v. Cole*, 17 id., 674. 2. The court erred in permitting witnesses who were not in any way acquainted with the handwriting of the president or cashier of the Bank of Rutland, to testify that the bill in question was counterfeit. 2 Phillipps on Ev. (C. & H.'s Notes), 603–607; *Comm. v. Carey*, 2 Pick., 47. 3. The bank bill offered in evidence should have been rejected for variance, (1.) Because it did not purport to have been issued "by a corporation duly authorized," &c. (2.) Because after the name of J. B. Reynolds it contained the word " Cash'r " and not the word " Cash." as alleged in the indictment. 1 Chitty's Cr. Law, 293, 293 a, 293 b. 4. The court erred in admitting proof that certain other bills said to have been passed by the defendant were counterfeit, those bills not being produced in court, nor their absence accounted for. If they were in the hands of the defendant, the prosecution should have notified him to produce them. *State v. Hooper*, 2 Bailey (S. C.), 37; Roscoe's Cr. Ev., 85; 3 Greenl. Ev., p. 118, § 111; 27 Vt., 724. 5. The state should have shown the legal existence of the bank by introducing in evidence its charter, or a legally certified copy of it, with proof that the corporation had

organized under such charter. *Stone v. The State*, 1 Spencer (N. J.), 401; *State v. Morton*, 8 Wis., 352; *Snow v. The State*, 14 id., 479. The actual *legal* existence of the bank, and its authority to issue such bills, must be shown under our statute. R. S., ch. 166, secs. 4, 6. 6. The court erred in the first instruction given to the jury. There was no evidence that the defendant passed " other bills of a like character and denomination, on the same bank, and *struck off from the same plate*," &c. There was no evidence that the bill in question was struck off from a *forged plate* at all, or that, if counterfeit, it was not so because the signatures of the president and cashier were forged to a bill from a true plate.

*Winfield Smith*, Attorney General, for the State :

1. The indictment is under sec. 6, ch. 166, R. S., and follows the language of that section. It is also good under sec. 2. *State v. Van Hart*, 2 Har. (N. J.), 327 ; Wharton's Cr. Law, § 1316, note e ; *Comm. v. Carey*, 2 Pick., 47 ; *Brown v. Commonwealth*, 2 Leigh, 772. It was not necessary to allege that the bank was authorized by law to issue such bills ; nor was it necessary that the bill should so declare on its face. *People v. Peabody*, 25 Wend., 472 ; 21 id., 311 ; 6 Serg. & R., 568 ; 5 Iredell, 287, 294 ; *Snow v. The State*, 14 Wis., 479. 3. The objection taken to the grand juror (if good at any time) came too late after indictment found. 3 Wend., 314 ; 5 Cranch, C. C., 457 ; 5 Halsted (N. J.), 83. This juror was not incompetent ; at most there was only ground of challenge for favor. 4. The existence of the bank may be proved by parol evidence, and it is not necessary to produce its charter, or the law under which it is incorporated. *People v. Davis*, 21 Wend., 309 ; *People v. Peabody*, 25 id., 472 ; *Sasser v. The State*, 13 Ohio, 453, 486 ; *Reed v. The State*, 15 id., 217 ; *Snow v. The State*, 14 Wis., 479 ; *Commonwealth v. Smith*, 6 S. & R., 568 ; *State v. Jones*, 1 McMullen, 236 ; *U. S. v. Foye*, 1 Curtis C. C., 364. 5. It was not necessary to produce the other counterfeit bills concerning which the witnesses were interrogated. 15 Ohio, 223.

6. The testimony offered to prove this and the other bills coun-
terfeit, was competent. *May v. The State*, 14 Ohio, 461 ; *Hess
v. Ohio*, 5 id., 7 ; *Reed v. State*, 15 id., 217 ; *State v. Carr*, 5 N.
H., 373 ; *Comm. v. Carey*, 2 Pick., 47 ; *Foulkes's Case*, 2 Robin-
son (Va.), 836 ; *State v. Harris*, 5 Iredell, 287 ; *State v. Candler*,
3 Hawks, 393 ; *Watson v. Cresap*, 1 B. Mon., 195 ; *State v. Spence*,
2 Harring., 348 ; *Comm. v. Smith*, 6 S. & R., 568.

*By the Court*, COLE, J.   For the purpose of showing the
defendant's guilty knowledge, witnesses were introduced on
the part of the state to prove that he had passed other coun-
terfeit bills of the same denomination and on the same bank
as the counterfeit bill laid in the indictment.   This evidence
was objected to, on the ground that the bills about which the
witnesses were interrogated were not produced in court.   And
it is insisted that, in order to render this testimony in regard
to passing other bills admissible, those bills should have been
produced in court, if within the reach of the prosecution, or
notice must have been given the defendant to produce them, and
he have failed to do so after it appeared they were in his pos-
session.   We are inclined to the opinion that this position is
sound, and states the correct rule of evidence on this point.
It is true we have not found many adjudged cases bearing di-
rectly upon this question ; but those which we have found
seem to favor this rule, and it is certainly in harmony with
the general analogies of the law.   In the case of *The People v.
Lagrille*, 1 Wheeler's Crim. Cases, 412, the court say that evi-
dence of passing other forged bills of the same description, or
showing the same in the possession of the prisoner, and notice,
may be given in evidence to prove the *scienter*, if such bills
be produced in court.   It is admitted that this is an exception
to the general rule, which extends to almost every case, and
which ties the party down in his proof to the notes laid in the
indictment.   See the following authorities, which have a bear-
ing upon this point more or less direct : *Rex v. Ball*, 1 Camp-

bell, 324; *Rex v. Millard*, R. & Ry., 245; *Stalker v. The State of Conn.*, 9 Conn., 341; Roscoe's Crim. Ev., p. 67; 1 Phil. Ev. (Edwards' ed.), p. 768, Note 208; 3 Greenl. Ev., § 111. The attorney general referred us to the case of *Reed v. The State*, 15 Ohio, 217, as laying down a different rule; but from the cautious manner in which the court expresses its opinion upon the question, it may be doubtful whether the case is good authority to the point to which it was cited. For the court say: "If the note was in court, or, without great inconvenience and delay, could be produced, in our opinion it should not be dispensed with. It would then afford to the accused the opportunity to contradict the proof as to the character of the note; and it should be produced on the trial if within the jurisdiction of the court and the reach of the prosecution." It seems to us that this fully recognizes and approves of the rule, that to admit proof that the defendant had passed other counterfeit bills, such bills themselves should be produced or their absence accounted for, as in other cases where secondary evidence is admissible. An examination and inspection of such bills in court would more satisfactorily show their character, and might possibly rebut the presumption of guilty knowledge.

An objection was taken to the testimony of Hughes, Brown and Paige, who swore in regard to the character of certain bills passed by the defendant, because they were not experts and did not profess to have any personal knowledge of the hand writing of the officers of the Bank of Rutland. They were persons who had been engaged in mercantile business for several years, and claimed to be judges of the character of bank notes in circulation. We have considered somewhat the objection taken to the admission of their testimony, but have formed no decided opinion upon the point, and therefore do not express any.

The other exceptions in the case we think must be overruled as untenable, unless it be an exception taken to the first instruction, which is not very clearly expressed and which might

have possibly confused the jury.  But still a new trial is awarded upon the point first decided.

The judgment of the circuit court is reversed, and a new trial awarded.