By the Court, Leonard, J.
The plaintiff in error was indicted and tried at the Court of General Sessions, for forging a check upon the Chemical Bank, purporting to be drawn by J. Edwin Conant & Co. The teller was asked, on the trial, whether the said firm kept an account at that bank, and the witness answered that it did not. The check was shown to the witness, and ho was then asked, “Did you ever see that check before ? Was it ever presented to you, at the bank, to your knowledge?” To which the witness replied: “It is my impression that it was presented to me.” He was further inquired of, whether the firm of Robert Cottier & Sons, who were the payees of the check, had an account at the said bank, at the date of the check, and the witness replied in the negative. Another witness, William Watson, an expressman, who was instrumental in the transaction, was asked this question: “In consequence of what information did you take the package to the corner of Eleventh street and Broadway?” To which he replied: “Of being wrote on the slate to deliver a box at the St. Denis hotel.” The counsel for the prisoner objected to each of these questions, and the objections being overruled he duly excepted.
*131 These inquiries tended to develope the history of the case, and although they might have been dispensed with for the want of materiality, I am unable to perceive that the evidence which was thereby evoked produced any injury to the prisoner. The check purported to have been certified by the bank, but the teller testified that it was not genuine.
The entry on the slate possibly was not made by the prisoner; but he must have known that it had been made, because he afterwards returned to the office of the expressman, and asked him if he did not see the order on the slate. This recognition sufficiently connected the prisoner with the entry to justify the reference to it, at the trial.
It was urged, on the argument, that the evidence of the teller had a tendency to prove a different offence from that charged; viz., obtaining goods by “false pretences.” The attempt to obtain the property of Cottier & Sons by this forged check was, in a minor sense, the crime of “false pretences.” If the evidence tended to prove the minor offence, it was because the greater crime, in this instance, included the lesser. The fact that neither the persons purporting to be the drawers, nor the indorsers, of the check, had any account with the bank by which the check purported to be certified, is a part of the history of the check alleged to have been forged, and so becomes connected with the alleged crime.
The prisoner’s counsel insisted, at the close of the evidence for the prosecution, that the prisoner had not been connected with the offence, and moved that he be discharged. It was not proven that he wrote or signed the check, but there were circumstances tending strongly to establish that the prisoner fraudulently uttered it. He left with the expressman a sealed envelope, directed to Cottier & Sons, containing the certified check, and an order to Cottier & Sons to deliver specified gold leaf to *132 the bearer, and to receipt the bhl. He also requested the expressman to deliver the letter, and get from Cot-tier & Sons a box, which he was to convey to the St. Dennis hotel. The expressman performed his directions, carried the box to the hotel, where the prisoner met him, claimed and received the box, and paid the express charges. This evidence was sufficient to be submitted to the jury.
Some exceptions were also taken to the recorder? s charge. He charged the jury, in substance, that the evidence of the prisoner’s guilt was irresistible to his mind, laying out of view the evidence of the prisoner in his own behalf. This was an interference with the province of the jury; but the recorder added, in the next sentence, that his opinion had nothing to do with their deliberations, and they must judge for themselves, irrespective of his opinion. It would have been better to have omitted an expression of opinion from the learned court, but the whole subject was so submitted that the jury must have decided the case independently.
The recorder referring to the evidence given by the prisoner in his own behalf, said, in substance, if the story of the prisoner is true, he was at the restaurant when arrested, where that man was, (referring to the man by whom the prisoner stated he had been sent with the letter containing the check, and to procure the express-man to get the box of gold leaf.) The recorder further added: “I ask you if you were arrested under suspicion of crime, if you believe, for a moment, that the police officer, who has sworn to do his duty, or the sergeant to whom this matter is communicated, would refuse to have that man sent for.” The prisoner’s counsel insists that this was an instruction that the law imposed a duty upon the police officer to assist him to get his witnesses, and to secure and produce the person designated by the prisoner; that the jury might so understand it, *133 and the officer not having made the arrest, that the jury wonld hold that there was no such person.
This is fallacious. The proper inference from this portion of the charge is, that an officer would, on being requested, arrest the person charged by the prisoner 'as a principal or accomplice. And in connection with the evidence, it was an inquiry whether the prisoner had made any such charge as he had testified to. The prisoner had testified that he told the officer, at the time of his arrest, that he was mistaken in the person; that the man who had employed him to engage in the matter was in the restaurant, near by. The officer testified that no such conversation occurred. The recorder had this evidence in view, and he put the inquiry to call the attention of the jury to the improbability of the statement of the prisoner. It would clearly have been the duty of the officer to arrest a principal or accomplice, or at least to inquire into the probability of the prisoner’s charge, had he in fact made it at the time of the arrest. I think the commentary was within the province of the court, in charging the jury.
The same observation will apply, obviously, to the exceptions to that part or portion of the charge wherein his honor the recorder charged the jury as follows: “But if the testimony for the prosecution leads you to the conclusion that he was acting in complicity with another party for the purpose of effecting the results of this forgery, then both are equally guilty,” and to that part or portion of the charge wherein the recorder charged the jury as follows: “That is an attempt to vindicate himself from this crime. It is for you to say whether the prisoner, unaided by any other testimony, would not fashion some story to impose upon your intelligence; it is for you to say whether he has told the truth, or whether this is a trumped up excuse to vindicate himself from the strait in which he found himself.” *134 And the prisoner’s counsel have not specially urged an objection to those portions of the charge.
[First Department, General Term, at New York,
November 4, 1812.
Ingraham, Leonard and Learned, Justices.]
Upon the whole case, there was no substantial error, or prejudice done to the prisoner.
The judgment should be affirmed.