## COURT OF APPEALS,
### Oct, 1906.

# THE PEOPLE v. JAMES F. DOLAN.*

### (186 N. Y. 4.)

(1). UTTERING OF FORGED NOTE—EVIDENCE OF THE UTTERING OF OTHER FORGED NOTES BY DEFENDANT—WHEN ADMISSIBLE.

Where the only issue, upon the trial of a defendant charged with feloniously uttering a forged note with intent to defraud, is whether the defendant knew that the note was forged at the time that he indorsed it and had the amount thereof credited upon his bank account, evidence of the indorsement and uttering of other forged notes by the defendant is competent, especially where it appears that all of the notes were made at about the same time; that in each case the note was made payable to the defendant and indorsed by him; that during the period covered by all of the notes the defendant was in financial difficulties and endeavoring to raise funds to meet his obligations, and that in each case he used the name of some person or firm with whom he had done business and with whose affairs he was familiar, so that this combination of circumstances was sufficient to establish a common plan and identity of method so connected as to have a strong tendency to overcome any claim of innocent intent in the uttering of the note charged in the indictment.

(2). SAME—WHEN CONTENTS OF FORGED PAPERS MAY BE PROVED BY SECONDARY EVIDENCE.

While it is the general rule that, where it is sought to give evidence of other forgeries than the one charged in the indictment, the forged papers upon which such evidence is predicated must be produced, yet where such papers have not been produced by the defendant pursuant to notice served upon him by the prosecution, and there is evidence that the forged papers were returned to the defendant in the ordinary course of business, a question of fact is presented for the determination of the trial judge, and his decision thereon, permitting the prosecution to give secondary evidence of the contents of the forged papers, is not reviewable in the Court of Appeals.

* Reversing 111 App. Div. 600.

(3). SAME—SELF-SERVING DECLARATIONS AND HEARSAY STATEMENTS.

While the defendant is entitled to introduce all proper evidence of facts tending to show that he did not know that the note was a forgery, and of facts bearing upon the question of his intent in uttering the note, yet he is not entitled to testify to self-serving declarations and hearsay statements to the effect that his clerk had admitted to him and to the president of the bank at which the note was discounted, that she had made the note herself, especially where the clerk was present at the trial and might have been called as a witness.

(4). SAME—ERRONEOUS TAKING OF EXHIBITS BY JURY—WHEN SUCH ERROR DOES NOT WARRANT REVERSAL OF JUDGMENT OF CONVICTION.

Where exhibits introduced in evidence by the prosecution were taken into the jury room, by mistake or otherwise, without the consent of the defendant, but no objection was made to the jury having them until after a verdict had been rendered against the defendant, more than an hour thereafter, such fact does not constitute such a substantial error as to warrant the Court of Appeals in awarding a new trial, especially where the papers had been examined by the jury during the trial and it does not appear what, if any, use was made of them in the jury room.

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 9, 1906, which reversed a judgment of the Court of General Sessions of the Peace for the county of New York convicting the defendant of the crime of forgery in the second degree and granted a new trial.

The facts, so far as material, are stated in the opinion.

*William Travers Jerome, District Attorney (Robert C. Taylor* of counsel), for appellant. The trial court properly excluded the declarations that Miss Fitzpatrick made the note. (*Austin* v. *Bartlett,* 178 N.Y. 310; *Connolly* v. *R. R. Co.,* 179 N. Y. 7; *People* v. *Wolf,* 183 N. Y. 464, 477; *Kennedy* v. *People,* 39 N. Y. 245; *Reinhart* v. *People,* 82 N. Y. 608; *People* v. *Hawkins,* 109 N. Y. 408; *Greenfield* v. *People,* 85 N. Y.

75.) Evidence of similar crimes was competent. (*People* v. *Van Tassell,* 156 N. Y. 561; *People* v. *Everhardt,* 104 N. Y. 591; *People* v. *Place,* 157 N. Y. 584; *People* v. *Molineux,* 62 L. R. A. 193; *People* v. *Gaffey,* 182 N. Y. 257; *Hope* v. *People,* 83 N. Y. 418; *People* v. *Murphy,* 135 N. Y. 450; *People* v. *Zucker,* 20 App. Div. 363, 154 N. Y. 770; *Farrell* v. *People,* 21 Hun, 485, 84 N. Y. 656; *People* v. *Putnam,* 90 App. Div. 125.) The application for a new trial on the ground that the jury took certain exhibits into the jury room without defendant's consent was properly denied. (*People* v. *Buchanan,* 145 N. Y. 1; *People* v. *Draper,* 28 Hun, 1; *People* v. *Kelly,* 2 N. Y. Cr. Rep. 15; *People* v. *Johnson,* 110 N. Y. 134; *People* v. *Gallagher,* 75 App. Div. 39, 174 N. Y. 505; *People* v. *Flack,* 8 N. Y. Cr. Rep. 31, 57 Hun, 83; *People* v. *Johnson,* 110 N. Y. 134; *People* v. *Priori,* 164 N. Y. 459; *People* v. *Carnal,* 1 Park. Cr. Rep. 256.)

*Alfred R. Page* for respondent. The trial court erred in excluding evidence which tended to show that defendant did not know that the note was forged until after it became due, and what he did on making the discovery. (*Platner* v. *Platner,* 78 N. Y. 45; *Donohue* v. *People,* 56 N. Y. 208; *People* v. *Gardner,* 144 N. Y. 119.) Secondary evidence was received against the objection of the defendant as to the contents of notes other than the one specified in the indictment, which were claimed were forged and uttered by the defendant. (*Anson* v. *People,* 148 Ill. 503, Abb. Cr. Tr. Brief, 415, Underhill Cr. Ev. 488; *State* v. *Breckenridge,* 67 Iowa, 204; *Kearney* v. *Mayor, etc.,* 92 N. Y. 621; *People* v. *Corbin,* 56 N. Y. 363; *Regina* v. *Cook,* 8 C. & P. 582; *Fox* v. *People,* 95 Ill. 75; *Sherman* v. *People,* 13 Hun, 575.) Evidence was improperly admitted as to collateral notes in no way connected with the note described in the indictment. (*People* v. *Corbin,* 56 N. Y. 363; *People* v. *Weaver,* 177 N. Y. 434; *State* v. *Raymond,* 53 N.

J. L. 265; *Coleman* v. *People,* 55 N. Y. 81.) The court erred in denying defendant's motion to set aside the verdict and for a new trial, upon the ground that the exhibits were improperly given to the jury. (*Howland* v. *Willetts,* 9 N. Y. 170; *Sanderson* v. *Bowen,* 2 Hun, 153; *Schappner* v. *S. A. R. R. Co.,* 55 Barb. 497; *Porter* v. *Mount,* 45 Barb. 422; *Dolan* v. *Ætna Ins. Co.,* 22 Hun, 403; *People* v. *Gallagher,* 75 App. Div. 43; *Matter of Foster,* 34 Mich. 21; *Chance* v. *I., etc., R. R. Co.,* 32 Ind. 472; *W. B. & L. Co.* v. *Mix,* 51 N. Y. 560.)

WERNER, J. The defendant was indicted by the grand jury of New York county for the crime of forgery in the second degree. The indictment contained two counts. The first count charged him with forging a note dated October 13th, 1897, for two thousand dollars, payable to the order of himself at the West Side Bank, and purporting to be signed by the firm of Thos. Cockerill & Son. The second count charged him with feloniously uttering the same forged instrument with intent to defraud, knowing it to be forged. The first count was abandoned at the trial and the defendant was tried and convicted on May 19th, 1904, upon the second count.

There was ample evidence to warrant the jury in finding the defendant guilty of uttering the forged instrument as charged in the second count, but the judgment of conviction was set aside at the Appellate Division by a divided court, for errors said to have been committed by the trial court in its rulings upon the admission and exclusion of evidence.

That the note was a forgery was conceded; and it was established beyond a doubt that Cockerill & Son, whose name had been signed to it, had never authorized such signing. It was brought to the Twelfth Ward Bank of New York city on October 13th, 1897, the day of its date, by a Miss Fitzpatrick, who was the bookkeeper of the defendant. The evidence was sufficient to justify the jury in finding that the defendant called at

the bank later in the same day and indorsed it. The amount of the note was then placed to his credit. The defendant, testifying in his own behalf, stated that he was not in New York city on that date; that he did not indorse the note until some days later, and that he did not then know it was a forgery, as he had many transactions of a somewhat similar character with the bank. The defendant was a stone contractor, and the evidence tended to show a course of business dealings between him and Cockerill & Son, who were building contractors.

For the purpose of showing guilty knowledge on the part of the defendant the prosecution proved the uttering by him of several other forged notes. The defendant's counsel objected to the evidence relating to these other notes, and the exceptions based upon that objection raise the important question in this case. Two of the other forged notes were signed with the name of Cockerill & Son and made payable to the defendant. They were indorsed by him and discounted at the Twelfth Ward Bank. The first one was a three months' note dated May 13th, 1897, and was for $2,500. The second was a two months' note dated August 13th, 1897, and was for $2,000. It was given to pay off the first note, and at the same time the defendant paid the bank $500 and the amount of the discount. The note set up in the indictment was given to pay off this second note. There were two other forged notes signed with the name of James Stewart & Co., who were also building contractors, between whom and the defendant had been business dealings. Each one of these notes was for $3,200, made payable to the defendant and indorsed by him. The first one was given to Isaac A. Hopper, who procured it to be discounted for the defendant at the Twenty-third Ward Bank and turned over the proceeds to the defendant. The second the defendant gave to John J. Hopper, a brother of Isaac, who loaned him money on it. Still another one of the forged notes was signed with the name of Patrick Gallagher, who was also a builder with whom

the defendant had business dealings. This note was for $1,697, and was discounted by the defendant at the Nineteenth Ward Bank. All these transactions took place in 1897, and the evidence shows that at that time the defendant was in financial difficulties.

We think that all this evidence was clearly competent and that the learned Appellate Division erred in holding otherwise. The rules governing the introduction of proof of other crimes than that charged in the indictment have been so fully discussed in recent cases in this court that no extended examination of the authorities need here be made. (*People v. Molineux,* 168 N. Y. 264, 16 N. Y. Crim. 120; *People v. Weaver,* 177 id. 434, 19 N. Y. Crim. 171.) The case at bar is controlled by the decision in *People v. Everhardt* (104 N. Y. 591). In that case the late Judge EARL stated the rule as follows: "Upon the trial the people were allowed to prove, against the objection of the defendant, the uttering of other forged checks by him upon other occasions. In this there was no error. The defendant by his plea of not guilty had put in issue everything which it was incumbent upon the people to prove. They had no direct or positive evidence that he personally forged the check which he uttered, and it was open for him to show that at the time he uttered it he had no knowledge that it was forged, and was therefore innocent of crime; and for the purposes of showing the prisoner's guilty knowledge in such cases it has always been held competent to prove other forgeries. Such proof is not received for the purpose of showing other crimes than that charged in the indictment, but for the purpose of showing the guilty knowledge and intent which are elements of the crime charged, and it can be considered by the jury only for that purpose." "A man might think," said Judge PECKHAM in *People v. Sharp* (107 N. Y. 467), "the money he passed was good, and he might be mistaken once or even twice; but the presumption of mistake lessens with every

repetition of the act of passing money really counterfeit." The latter observation very tersely states a rule that is as applicable to prosecutions for forgery as to cases of passing counterfeit money.

It is contended, however, that the rule has been changed by our decision in the recent case of *People* v. *Weaver* (177 N. Y. 434, 19 N. Y. Crim. 171). We think there is no similarity between the two cases. In the *Weaver* case it was claimed by the defendant that she believed in good faith to have been authorized by one Davis to indorse the note there charged as a forgery. Evidence of other forged notes not bearing the name of Davis was admitted. This was held to be error. In the case at bar the defendant does not claim to have believed that he had authority to sign the name of Cockerill & Son to the forged note he is charged with uttering. His contention is that he did not know it was a forgery. The difference between the two cases is obvious. Upon the record now before us the issue of guilty knowledge was squarely up and, as bearing upon it, evidence of the uttering of other forged instruments by the defendant was clearly competent.

There is also another ground upon which this evidence was competent. All the notes referred to in the evidence were made at about the same time. In each case they were made payable to the defendant and indorsed by him. During the period covered by all the notes the defendant was endeavoring to raise sufficient funds to meet his obligations, and in each case he used the name of some builder with whom he had done business and with whose affairs he was familiar. This combination of circumstances was sufficient to establish a common plan and identity of method so connected as to have a strong tendency to overcome any claim of innocent intent in the uttering of the note charged in the indictment. The evidence bearing on these other notes served to show that the defendant was endeavoring to meet his obligations as they became due, by making a

fraudulent and intentional use of the names of contractors with whom he had business relations. The same general features were present in all of the transactions which seem to have been the product of one general scheme. These facts and circumstances were sufficient, we think, to bring the case within the exceptions to the general rule that excludes proof of extraneous crimes. As was said in the *Molineux Case* (168 N. Y. 264, 305): "They must be so connected as parts of a general scheme, or they must be so related to each other as to show a common motive or intent running through them." It is true that the evidence of this general plan or scheme also tended to show the defendant guilty of other crimes, but that, as was very aptly stated by Judge COOLEY in a Michigan case, is one of the misfortunes of such a defendant's position. (*Carver* v. *People,* 39 Mich. 786.)

It is further contended by the learned counsel for the defendant, that even if the evidence relating to the other forged notes was admissible, yet no proper foundation was laid for its introduction. Notices to produce these other notes had been served by the prosecution upon the defendant, but they were not produced at the trial. The prosecution was thus driven to give secondary evidence of their contents. When that was attempted the objection was promptly raised that such evidence could only be received after proof of loss or destruction of the notes, or of their delivery to the defendant. It is an eminently safe rule that where it is sought to give evidence of other forgeries, the forged documents upon which it is predicated must be produced, and so it has been held in other jurisdictions. (*State* v. *Breckenridge,* 67 Iowa, 204; *State* v. *Saunders,* 68 id. 371; *People* v. *Lagrille,* 1 Wheeler's Crim. R. 412; *Anson* v. *People,* 148 Ill. 503.) But in none of the cases cited was there any notice to produce; neither were the instruments in question sought to be accounted for. The rule is subject to the same qualification in criminal as in civil cases. The instru-

ment must be produced or its absence satisfactorily accounted for. (*State* v. *Cole,* 19 Wis. 129, 134.) Of course the mere notice to produce does not take the place of evidence, and it must be shown that the instrument is in the possession or under the control of the party required to produce it. (*Smith* v. *Streat,* 1 Carr. & Kirw. 48.) " But of this fact very slight evidence will raise a sufficient presumption where the instrument exclusively belongs to him, and has recently been or regularly ought to be in his possession, according to the course of business." (1 Greenleaf Ev. § 560.) In *Robb* v. *Starkey* (2 Carr. & Kirw. 143, 61 Eng. Com. L. R. 143) a notice to produce a contract was served upon defendant. Plaintiff's clerk testified that he could not say positively whether he had sent that particular contract to Bourne, defendant's broker; but he also stated that if it came into his hands to be delivered to Bourne in the ordinary course of business, he had no doubt that it had been delivered. This was held sufficient to permit secondary evidence of the contract. To the same effect is *Henry* v. *Leigh* (3 Campb. 499), decided by Lord ELLENBOROUGH.

In the light of these suggestions let us now examine the evidence in the case at bar as to the other forgeries. There were five of them; two Cockerill notes, two Stewart & Co. notes and one Gallagher note for $1,697. There was fragmentary and incomplete evidence as to other Gallagher notes, but the evidence as to all Gallagher notes, except the one for $1,697, was stricken out and need not be considered. In each case where the note then considered was not directly traced into the defendant's hands, an officer of a bank testified that it had been returned to the defendant, but this was stated not so much from personal recollection as from the regular course of business which had been followed. The first Cockerill note was for $2,500, and was discounted at the Twelfth Ward Bank. It came due August 13th, 1897, and on that day was seen in the

possession of the note teller.   Later in the day the defendant came to the bank, paid $500 and gave a new note for $2,000, and also paid the amount of the discount, thus paying off the first note.   The president of the bank who had conducted this transaction was dead, and there was nobody to swear that the note was actually delivered to the defendant.   The second Cockerill note came due on October 13th, the date of the note set up in the indictment, and was paid off by the giving of the latter note.   Defendant came to the bank on that day to indorse the latter note.   Isaac A. Hopper, who was vice-president of the bank, testified that he returned one of these notes to the defendant, but he did not know which one, and the cashier testified to the custom that when a new note was given the old one was returned.

The first Stewart note was for $3,200, dated July 29th or 30th, 1897, and payable at the Marine Bank of Buffalo.   It was discounted at the Twenty-third Ward Bank of New York city at the request of Isaac A. Hopper, and fell due about October 25th, 1897.   On October 19th John J. Hopper, a brother of Isaac, loaned defendant $3,200 to pay off this note, and defendant promised to bring the note to him when paid, but failed to do so.   It was paid by defendant at the bank on October 29th, and ordered returned from Buffalo, to which place it had been mailed.   It was received at the bank on October 26th.   The second Stewart note was returned to defendant by John J. Hopper.   The Gallagher note was discounted at the Nineteenth Ward Bank and came due about August 25th, 1897.   Defendant paid the note at the bank on August 27th. He had received a $1,500 check from John J. Hopper and this check was received at the bank when the note was paid.

From this *resumé* of the evidence bearing upon the ultimate disposition of the several notes referred to, we think it is quite permissible to draw the conclusion that they were all returned to the possession of the defendant.   That was the ordinary

course of business, as testified to by one of the witnesses, and that is the familiar experience of all who have occasion to pay notes at banks. There was evidence in this behalf which, to say the least, presented a question of fact for the determination of the trial judge, and his decision thereon is not reviewable in this court. (*Dix* v. *Atkins,* 128 Mass. 43; *Kearney* v. *Mayor, etc., of N. Y.,* 92 N. Y. 617, 621; *Mason* v. *Libbey,* 90 id. 683; *McCulloch* v. *Hoffman,* 73 id. 615, Thompson on Trials, § 806.) It may be added that where the instruments sought to be produced are of little or no value, as in this case, the proof required to establish loss or possession is proportioned to their character and value. (*Jackson* v. *Root,* 18 Johns. 60, 73, Thompson on Trials, § 809, 1 Greenleaf Ev. § 558.)

The next question for consideration arises upon the exclusion of certain questions put to the defendant by his counsel when he was testifying in his own behalf. The defendant had testified that he did not know that the note set up in the indictment was a forgery until it became due on November 13th, 1897, when he was informed by Mr. Steers, the president of the bank, that there was an informality about it, and that he, the defendant, returned to his office and had a conversation with Miss Fitzpatrick. The following questions were then asked him and excluded under exception: " Q. As a result of that conversation did you direct her to go to any one and tell her what to tell them ? Q. Who did you tell her to go to see ? Q. Did you afterwards, after that time, see Mr. Steers, the president of the bank, and did he tell you that Miss Fitzpatrick had been to see him ? Q. Did you after that time see Mr. John F. Cockerill, and did he tell you that Miss Fitzpatrick had been to see him ? A. Yes, sir; he did. Q. Now, when you saw Miss Fitzpatrick at your office did she tell you that she had made that note ? Q. Did Mr. Steers, the president of the bank, after the 13th day of November, 1897, tell you that

she had been to see him and told him that she made that note?
Q. Did Kate Fitzpatrick, when you saw her in the office, tell
you that she had made that note?" It is contended by the
learned counsel for the defendant, and the Appellate Division
has held, that the facts called for by these questions were ad-
missible as tending to show that the defendant did not know
the note set forth in the indictment was a forgery, and as bear-
ing upon the question of his intent in uttering it. It may be
conceded that he had the right to introduce all proper evidence
tending to establish these facts, but we do not think the evi-
dence called for by the quoted questions is of that character.
It is obvious that these interrogatories were designed to elicit
self-serving declarations and hearsay statements of the bank
president and Miss Fitzpatrick, the latter of whom was in the
court room and might have been called had the defendant de-
sired her evidence. It appears that the bank president had
died prior to the trial, but that did not make the evidence ad-
missible. (*Gray* v. *Goodrich,* 7 Johns. 95.) Had the declara-
tions called for been admitted they would have been hearsay,
which were not within any of the exceptions to the rule ex-
cluding such evidence. We think the rulings of the trial court
in this regard were correct, since the defendant was permitted
to testify to the one competent fact, that the first knowledge he
had that the note was a forgery was when he talked with Miss
Fitzpatrick.

After the jury had brought in their verdict the counsel for
the defendant called attention to the fact that the jury had
taken to the jury room certain exhibits introduced in evidence
by the prosecution. This was subsequently urged as ground
for setting the verdict aside. It does not clearly appear just
how the jury obtained possession of the exhibits. Under sec-
tion 425 of the Code of Criminal Procedure, exhibits can be
taken into the jury room "only upon the consent of the de-
fendant and the counsel for the people." The defendant did

not consent to the taking of these exhibits, but no objection was made to the jury having them until after the verdict against the prisoner had been rendered, which was more than an hour after the jury had retired for deliberation.   The exhibits thus taken were two notes made by the defendant on the same date as the note charged in the indictment, introduced to show that the defendant was in New York city on that date, and a specimen note written by the defendant at the trial at the request of the district attorney.   These papers had been examined by the jury during the trial.   It does not appear what use the jury made of them while in the jury room, and we do not think their further examination of them, if any, was such a substantial error as to warrant this court in awarding a new trial.   It is our duty to render judgment without regard to technical errors, defects or exceptions which do not affect the substantial rights of the parties.   (Code Crim. Pro. § 542; People v. Gallagher, 75 App. Div. 39, 17 N. Y. Crim. 18. Affd., 174 N. Y. 505.)

The record contains other exceptions to rulings and to refusals by the trial court to charge as requested by defendant's counsel, but these present no question of sufficient importance to justify further discussion.

The order of the Appellate Division should be reversed, and the judgment of conviction of the trial court affirmed.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, VANN, WILLARD BARTLETT and CHASE, JJ., concur.

Order reversed, etc.

EVIDENCE OF OTHER CRIMES ON TRIAL FOR FORGERY.

Evidence of other crimes on the trial of an indictment for forgery is admissible,—

1.   To show intent (a) as paart of a common scheme; (b) in particular cases.

2. To show the connection of the defendant with the crime charged in the indictment.

3. When the other crime forms part of the *res gestae*.

4. When the other crime is relevant to the issue.

1. (a) To show intent as part of a common scheme,—

On trial for forgery of a bank-check. Evidence going to prove a general agreement on the part of the defendants to obtain money on forged paper from various banks, is held admissible. State v. Morton, 27 Vt. 310.

On the trial of an indictment for uttering a forged check, evidence is admissible to show that the act was part of a systematic plan, and to show what the plan was. Mason v. State, 31 Tex. Crim. Rep. 306.

Testimony showing similar acts as part of a general scheme is admissible. People v. Kemp, 76 Mich. 410.

Permitting the indorser to testify or refer to other notes purporting to have been executed by the defendant and claimed to have been forged, but which did not purport to be indorsed by him, and admitting them in evidence constitutes reversible error. People v. Weaver, 18 N. Y. Crim. Rep. 171.

1. (b) To show intent in particular cases,—

Where an alteration is made in a school order, evidence as to alterations in similar orders issued at the same time, is admissible. Smith v. State, 29 Fla. 408.

Other notes, purporting to be made by different persons, but forgeries, and payable to same payee, held admissible on a trial for the forgery of a promissory note. Card v. State, 109 Ind. 415.

On trial for the forgery of a deed, deeds of similar character, executed in same place, purporting to be signed by same party and before same notary, held admissible. State v. Minton, 116 Mo. 116.

Evidence of prior forgeries by same person admissible on trial of another for instigating a forgery, to prove criminal intent of the person who actually committed the forgery. Burlingim v. State, 1 Neb. 85.

On trial for forgery, evidence of the uttering of the same note is admissible to show animus. Hoskin v. State, 11 Ga. 92.

Evidence as to admissions of defendant in regard to forgeries

other than the one charged in the indictment inadmissible. Reg. v. Cooke, 8 Carr. & P. 586.

Evidence of other forgeries committed nine months after the commission of the crime charged in the indictment, held too remote, and inadmissible. People v. Baird, 104 Cal. 462.

Evidence inadmissible as to written acknowledgment of other forgeries of a different person's name, where question of the guilt or innocence of accused depends on whether he honestly believed himself authorized to sign the note. People v. Corbin, 56 N. Y. 363.

Evidence of a continuous series of similar transactions prior and subsequent to act upon which indictment is based, held admissible. Com. v. White, 145 Mass. 392.

On trial of indictment for forgery, evidence of uttering by defendant of other forged checks upon other occasions held competent to prove guilty knowledge. People v. Everhardt, 104 N. Y. 591.

Other similar checks found upon person of defendant, held inadmissible to prove intent, where no proof that they were also forgeries. People v. Altman, 11 N. Y. Crim. 449, 147 N. Y. 473.

Evidence as to similar order in same handwriting bearing same alleged signature, admissible on trial of indictment for forging an order for goods. Wright v. State, 34 So. Rep. 1009.

2.   To show the connection of the defendant with the crime charged in the indictment,—

Evidence of an attempt to pass the same instrument on another party prior to the date of the uttering of the forgery charged, admissible to show the intent and connect defendant with the crime. Hoskin v. State, 11 Ga. 92.

Evidence of explanation by defendant to witness of his method of procedure in raising and uttering checks, held competent to prove his connection with the crime charged, which crime was perpetrated in the same manner. Cross v. People, 47 Ill. 152.

Proof of similar transactions competent to establish connection of defendant with the crime charged. People v. Bibby, 91 Cal. 470.

3.   When the other crime forms part of the *res gestae,—*

On trial for forgery of a power of attorney, evidence that the power of attorney and a deed executed under it were in the same handwriting, that of a person who was concerned with defendant in

the perpetration of the fraud, held admissible as part of the *res gestae*. People v. Marion, 29 Mich. 31.

Where the defendant obtained two articles on the faith of a forged order for but one of them, evidence as to the obtaining of the article not called for in the order is held admissible as part of the *res gestae*. Hobbs v. State, 75 Ala. 1.

4. When the other crime is relevant to the issue,—

On trial for the forgery of a note, where a second note was forged in order to get an increased loan on the faith of the first note, placing of the second note in evidence held relevant to the issue. Harding v. State, 54 Ind. 359.

On trial for forging and uttering a check, evidence is inadmissible as to the fact that the firm whose name was forged had no account in the bank on which the check was drawn. Watson v. People, 64 Barb. 130.

Evidence of retention of money collected by a salesman admissible on trial for forging note which was turned in in place of the money collected, to show the intent. Spears v. People, 220 Ill. 72.

Evidence as to finding on prisoner's wife of similarly prepared forgeries, without evidence of complicity, inadmissible. People v. Thomas, 3 Park. Crim. 256.