claimed by the plaintiff, the defendant was called upon to explain it. If it was impossible, as the defendant now contends, evidence should have been presented to show that. From our knowledge of the operation of these trains, we cannot say that the accident could not have happened. The truth of the plaintiff's story was for the jury.

The judgment is reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur.

---

### WILLSON v. FAXON, WILLIAMS & FAXON.

(Supreme Court, Trial and Special Term, Erie County. May, 1909.)

1. DRUGGISTS (§ 10*)—ACTION FOR NEGLIGENT SALE OF TABLETS—SUFFICIENCY OF EVIDENCE TO SUSTAIN VERDICT.

In an action against a drug company for personal injuries, evidence *held* to sustain a verdict for plaintiff on the ground that defendant negligently sold to plaintiff's husband for her use tablets containing calomel, likely to be injurious to health.

[Ed. Note.—For other cases, see Druggists, Dec. Dig. § 10.*]

2. APPEAL AND ERROR (§ 1060*)—HARMLESS ERROR—HANDING EXHIBIT TO JURY.

In an action against a drug company for the negligent sale of tablets injurious to health, conduct of plaintiff's counsel in handing the exhibit to the jury when it retired, without first asking permission of the court, was an immaterial and unprejudicial irregularity.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1060.*]

Action by Fannie E. Willson against Faxon, Williams & Faxon. There was a verdict for plaintiff, and defendant moves for a new trial. Denied.

Carlton E. Ladd, for the motion.
Charles Newton, opposed.

POUND, J. This is an action to recover damages for personal injuries sustained by plaintiff by reason of the alleged negligent sale to plaintiff's husband for her use as a harmless vegetable remedy of tablets containing calomel. The evidence establishes that defendant, a corporation engaged in the retail drug business, sold a box of "Kascara Kathartics" to plaintiff's husband, for plaintiff's use, as a substitute for liquid cascara segrada, a harmless remedy which plaintiff was in the habit of using, representing the same as harmless and virtually the same as cascara. Plaintiff took one tablet each night and morning for two days, according to directions, and an illness known as "mercurial stomatitis" followed. This unfortunate result was due to the fact that each tablet contained, among other ingredients, one-fifth of a grain of calomel, or mercurous chloride. In those persons who have a special susceptibility, the use of calomel in small doses repeated may cause inflammation of the mouth and salivary glands; but when calomel is followed by, or, as in these tablets, combined with, other laxatives, such ill effects are unusual from doses such as

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

were taken by plaintiff. Defendant had sold many boxes of these tablets without complaint for two years, having bought them of a reputable manufacturer and wholesaler as an equivalent of "Cascarets," a well-known proprietary cathartic. Defendant had no knowledge of their ingredients, or of the presence or absence of calomel or cascara in them, and made no inquiry in regard thereto, but sold them under its own label as manufacturing druggist and as a purely vegetable remedy. They had been in use in the United States for upwards of 10 years, and many pounds of them had been sold to and probably by retailers.

At the outset, this is a close case on the question: Were the "Kascara Kathartics" a harmful drug within the doctrine of the leading case of Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455? That case holds that one who negligently sells a poisonous drug as a harmless medicine is liable to all persons who, without fault on their part, are injured by using it as such medicine in consequence of such negligence. The court in its opinion says that "the death or great bodily harm of some person was the natural and almost inevitable consequence of" the negligent sale of belladona for the extract of dandelion, which is a simple and harmless medicine. If this decision "was based upon the idea that the negligent sale of poisons is  *  *  *  an indictable offense" (Hunt, J., in Loop v. Litchfield, 42 N. Y. 351, at page 359, 1 Am. Rep. 513), and is limited in its application to the sale of poisons essentially dangerous to life, plaintiff cannot recover; for these tablets do not come within the provisions of Public Health Law (Laws 1909, c. 49) § 236, and Pen. Law, § 1743, regulating the sale of poisons "liable to be destructive to human life." On the contrary, "cathartic pills" are among the drugs which any merchant may sell as such, along with simples like Epsom salts, Jamaica ginger, alum, and gum arabic (Public Health Law, § 237); and calomel, as such, may be sold freely by druggists to adult purchasers without prescription, poison label, or warning as to its qualities. While death or great bodily harm was far from being the "natural and almost inevitable consequence" to all persons who used these tablets according to directions, yet it seems unreasonable to limit the doctrine of dangerous instrumentalities to the negligent sale of deadly drugs. The jury was warranted in finding that, owing to the presence of calomel, these tablets, when sold as cascara or a purely vegetable remedy, were not harmless, but were, in and of themselves, likely to become injurious to the health of some of the many persons who purchased them as cascara in the course of the ordinary use to be contemplated by the vendor.

The next question is: Was the defendant negligent? Cascara is harmless. Calomel may or may not be. Indifference plus good luck does not equal prudence. In the face of the fact that many boxes of these tablets had been sold without any complaint of injury having resulted, due care being proportionate to the gravity of the injury that might result from lack of care, the jury was warranted in finding that, to a prudent druggist, cathartics should suggest calomel, and calomel should suggest salivation, and therefore the necessity of anal-

ysis, or, at least, inquiry, before placing these tablets on the market under a false and misleading label with an assurance of their harmlessness. In the recent siphon case (Torgesen v. Schultz, 192 N. Y. 156, 84 N. E. 956, 18 L. R. A. [N. S.] 726), explosion of bottles, followed by injuries, was not the inevitable, nor, indeed, the usual, result of defendant's negligence in selling bottles containing charged water without making sufficient tests. One defense was that defendant was justified in following the practice which had existed for a great many years without any resulting injury (Points of respondent, 192 N. Y. 157). Yet the court applied the doctrine of the Thomas Case, and held that the evidence required the submission of the question of defendant's negligence to the jury.

A verdict for the plaintiff was warranted by the evidence. Under the rule in the Dimon Case, 173 N. Y. 356, 66 N. E. 1, defendant's exceptions to the remarks of plaintiff's counsel in summing up, present no question for review. The conduct of plaintiff's counsel in handing the exhibit to the jury when it retired, without first asking the permission of the court, was an immaterial and unprejudicial irregularity. People v. Dolan, 186 N. Y. 4, 78 N. E. 569, 116 Am. St. Rep. 521.

The verdict was excessive, and should be reduced to $1,000. On that ground, motion for new trial granted, unless plaintiff stipulates to reduce, etc. In that case, motion denied.